## No. 10,432.

### BARNARD *v.* SWEET, ET AL.

Decided November 5, 1923. Rehearing denied January 7, 1924.

Action to recover for unpaid stock in a corporation. Judgment for defendants.

*Affirmed in Part,* .

*Reversed in Part.*

1. CORPORATIONS—*Stockholders—Surrender of Stock.* One who surrenders to a corporation his stock therein, duly indorsed in

blank, ceases to be a stockholder, although the stock is not transferred on the books of the company under the power therefor included in the indorsement.

2. WORDS AND PHRASES—*Corporate Stock—"Full Paid."* The words "full paid" used in connection with corporate stock, may mean that it was issued as full paid for property, which is its ordinary meaning among business men.

3. CORPORATIONS—*Stock—Issuance for Value.* The holding in some cases that unless intent to defraud be shown in a transaction involving the issuance of corporate stock by the directors of a corporation, the judgment of the board is not to be questioned, is not the whole rule. With a liberal but reasonable latitude for differences of opinion and errors in judgment, the consideration must be reasonably worth the par value of the stock issued for it, and the directors must really believe it to have such value, and have reasonable ground for the belief.

4. STOCK—*Consideration.* Services and property to the value of stock at par are good considerations for its issuance.

5. APPEAL AND ERROR—*Sufficiency of Evidence.* In an action for the value of corporate stock, it is held under the evidence that there was no full payment for the stock issued.

6. CORPORATIONS—*Stock Sale—Insufficient Consideration—Knowledge of Purchaser.* In an action for the value of corporate stock issued, the contention that the purchaser from a stockholder was without notice that the stock was issued for an insufficient consideration, overruled.

*Error to the District Court of the City and County of Denver, Hon. Francis E. Bouck, Judge.*

Mr. CARLE WHITEHEAD, Mr. ALBERT L. VOGL, Messrs. DANA, BLOUNT & SILVERSTEIN, Mr. JOHN W. STEPHENSON, for plaintiff in error.

Mr. WILLIAM H. DICKSON, for defendants in error.

*Department Two.*

MR. JUSTICE DENISON delivered the opinion of the court.

BARNARD, trustee in bankruptcy, had judgment against Sweet and MacFarland in a suit to recover for unpaid

stock in The International Improvement Company. The case was reversed (*Sweet v. Barnard,* 66 Colo. 526, 182 Pac. 22), and a new trial granted. Upon the new trial the defendants were successful and plaintiff brings the case here for review.

The situation is this: The Colorado Investment & Loan Company, a building and loan association,· which we will call the old company, in 1905 was meeting the difficulties which all such associations were meeting at that time, and, in order to overcome them, planned to form a new company with greater powers, which, under plans devised or compiled by one Bennett, who was president of the old company, it was hoped could take over the assets, customers and business of the old company and make it a business success. The transfer of these plans—which were elaborately prepared on paper—and stock of the old company, was the consideration for the issue of the stock of the new company, and was to carry out this arrangement, the very purpose for which the new company was created. The stock in the old company, which was the consideration for the issue of the stock in the new company, was called "protection stock," whatever that may mean; but in substance it was common stock and was subject to the obligations of the company on other stock called *installment stock,* which, if it was, properly speaking, stock at all, was preferred stock, and was entitled to all the dividends and assets of the company, to the extent of its par value, before the protection stock got anything. In the ordinary successful course of such a company, when the installments paid by the stockholder on his installment stock plus the dividends thereon had become equal to the par value thereof, the stock was said to be matured and the holder was then entitled to the full amount thereof, his profit being the amount of his dividends while it was maturing. When all the installment stock was thus paid, the common or protection stock would take the remainder of the assets. The installment stock was subject to withdrawal on certain conditions.

In 1902 the installment stock of the old company paid 18 per cent, and in 1903, 12 per cent in dividends. The dividend for 1904 is not shown, but there was none thereafter. The new company was formed in 1905, as we have said, to relieve the financial embarrassment of the old, which was so great that the company could not then meet the withdrawals of the installment stock, so rapidly were they coming in. At this juncture Bennett conceived the idea of forming a new company, as we have noted above, formed the new company and issued the stock in this manner, three shares to three directors of whom he was one, and the balance 299,997 shares to himself for the old protection stock and plans. To do this he made a formal offer to transfer them for $200,000, or stock as above, and the latter alternative was chosen by said three directors.

After this had been done, some time in the summer of 1905, he persuaded Sweet and MacFarland to become directors, and promised them stock if they would do so. They consented and Sweet continued as a director until 1912, when the new company went into bankruptcy.

MacFarland in 1907, surrendered his stock and resigned as director. The company did not become bankrupt till five years later. This we think relieves him from liability. He indorsed his stock in blank and sent it to the president of the company, but it was never transferred on the books and it is claimed that he therefore continued to be a stockholder. The indorsement, however, expressly included the usual power to transfer on the books which brings the case precisely within the terms of *Whitney v. Butler*, 118 U. S. 655, 7 Sup. Ct. 61, 30 L. Ed. 266 (a case which holds that under such facts an actual transfer on the books is not essential), and not within the terms of *Hawkins v. Glenn*, 131 U. S. 319, 335, 9 Sup. Ct. 739, 33 L. Ed. 184, or *Richmond v. Irons*, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864.

Sweet took 5,000 shares of the stock of the new company from Bennett in satisfaction of a debt from the old company to him, just before, as he testifies in one place, or just after, as he says elsewhere, Bennett told him of the plan

for organizing and conducting the new company. This debt of the old company was for stock in that company which he had owned and had surrendered. Later he received from Bennett 5,000 more shares for becoming director and interesting himself in the new company, and in January, 1907, 10,000 shares more because of certain money paid to the new company's use by him and another. Mr. Sweet testifies that he was told by Bennett that the stock was full paid and believed it was so when he took it. That, however, is not the same as saying, and he did not say, that he believed it had been paid for in full in cash or in property, fairly valued in cash at the par value of the stock; it may merely mean that it was issued as full paid for property, which is the ordinary meaning of "full paid" among business men.

The court found expressly that the stock of the new company "was duly issued by said company to George R. Bennett for a valuable, adequate and sufficient consideration * * * and that the stock thereupon became full paid and unassessable". It also found, more specifically, that it was issued as we have above stated. The court also found that Sweet took the stock from George R. Bennett "without notice of any defect or lack of consideration in the original issue, * * * but was led to believe and did believe that said stock * * * had previously been made full paid and nonassessable," and rendered judgment for the defendants.

The plaintiff in error claims that the evidence, in which there is no dispute, did not justify these findings, that the consideration for the original issue was worthless, and so obviously so that no purchaser, who, like defendant Sweet, had knowledge of what the consideration was, could fail to know it was worthless, or at all events far less in value than par of the new stock, $300,000.

That the protection stock in the old company had no money value is conceded, that it had a value of some sort as a convenience to the new company in taking over the assets of the old is all that is claimed for it; but that its

value in money for that purpose was any substantial part of $300,000 is incredible and there is no evidence of it. As to the plans, there is evidence that they were convenient for the new company and nothing more. They were not introduced in evidence. No attempt was made to show that they had a cash or money value, and it is not credible that they were worth in money any substantial part of $300,000. Furthermore, Bennett offered these assets to the new company for $200,000. Did he then honestly regard them as fairly worth $300,000?

The finding below on this point must, we think, have been because the court followed those cases which hold or state that unless intent to defraud be shown the judgment of the board of directors is not to be questioned. *Coit v. Gold Etc. Co.,* 119 U. S. 343, 7 Sup. Ct. 231, 30 L. Ed. 420. We think, however, as we have said above, that that is not the whole rule. With a liberal but reasonable latitude for differences of opinion and errors of judgment, the consideration must be reasonably worth the par value of the stock which is issued for it. The directors must really believe it is of such value in money and have reasonable ground for the belief. Our statute says: "The directors * * * may purchase * * * property * * * and issue stock to the amount of the value thereof in payment therefor." C. L. § 2249. This permission is equivalent to forbidding such issue beyond the value thereof. That services to the value of the stock at par are a good consideration for its issue we held in this case (66 Colo. 526, 182 Pac. 22) ; that they must be of such value we said in *Bivens v. Hull,* 58 Colo. 338, 343, 145 Pac. 694. If this is true of services, how can we say it is not true of property? Even where the statute says that the judgment of the directors shall be final, the New Jersey court holds that the value must be present, and that the property must be fairly valued in cash at the par value of the stock. *Holcombe v. Trenton Co.,* 80 N. J. Eq. 122, 82 Atl. 618. And even under the most liberal rule there must be some ground to believe in a money value of the consid-

eration equal to the par value of the stock. *Coit v. Gold Etc. Co., supra.*

Nor can the prospective profits of the new company be capitalized by their theoretical enhancement of the value of the convenience of the old stock and plans. *Holcombe v. Trenton Co., supra.* As to the insufficiency of the plans as a consideration, see *Webster v. Webster Ref. Co.*, 36 Okl. 168, 128 Pac. 261, 47 L. R. A. (N. S.) 697; *O'Bear-Nester Glass Co. v. Antiexplo Co.*, 101 Tex. 431, 108 S. W. 967, 109 S. W. 931, 16 L. R. A. (N. S.) 520, 130 Am. St. Rep. 865. See also *Camden v. Stuart*, 144 U. S. 104, 12 Sup. Ct. 585, 36 L. Ed. 363.

We are thus brought to the conclusion that on the undisputed evidence there was no full payment for the stock.

Upon the finding that Sweet was a purchaser without notice, we are forced by the foregoing conclusion and his own testimony to say that he had notice before he acquired the last 15,000 shares of the 20,000 he held, because, since he knew what the consideration was, and that the protection stock was subject to the installment stock, and the old company could not meet the withdrawals of the latter, he necessarily knew the old stock had no value except for convenience, and since the plans could not, as we have seen, have been of a money value equal to even a small part of $300,000, the par value of the new stock, it cannot be said that he did not know the consideration was inadequate. In other words, the evidence shows that while Mr. Sweet undoubtedly believed that this stock was full paid in the sense in which that word is ordinarily used, it must be said that he knew it was not full paid in cash nor in property of the real value of $300,000 or anything like it.

If the cancellation of Sweet's claim against the old company can be shown to be of any money value to the new company, that value should be credited Sweet on his purchase of the first 5,000, if it should be held, on another trial, that he is liable on that transaction. If it can be shown that he performed any services, as director or otherwise for the new company, with its consent, as a consideration

for the second 5,000 shares, whatever those services were reasonably worth should be credited on his purchase of the second 5,000; but it should appear, of course, that there was proper authority to draw pay for his services as director. What money he actually paid to the use of the new company, or whatever it was lawfully bound to pay him in that transaction, should be credited to him on the purchase of 10,000 shares. That is, if, on a new trial, he is held liable, what the company actually got from him should be credited on the claim of the company against him. See in our previous opinion what we said as to the claim against Mr. Dickson.  66 Colo. 526, 533, 182 Pac. 22.

This case should be distinguished from *Kunkle v. Soule,* 68 Colo. 524, 190 Pac. 536, and *Soule v. Kunkle,* 71 Colo. 221, 205 Pac. 529, where creditors were not concerned.

Affirmed as to defendant MacFarland.  Reversed and remanded as to defendant Sweet.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE WHITFORD concur.