518 P.2d 288 (1973)
Stephen H. BURCH, Plaintiff-Appellant,
v.
EXPLORATION DATA CONSULTANTS, INC., a corporation, et al., Defendants-Appellees.
No. 73-048.
Colorado Court of Appeals, Div. II.
November 20, 1973.
Rehearing Denied December 11, 1973.
Certiorari Denied February 11, 1974.
*289 Holland & Hart, Edwin S. Kahn, Denver, for plaintiff-appellant.
Seawell, Cohen & Sachs, Thomas C. Seawell, Denver, for defendants-appellees.
Selected for Official Publication.
PIERCE, Judge.
The plaintiff (Burch) filed a complaint stating, among other claims, two claims for relief against the defendant corporation, alleging (1) that the corporation wrongfully invoked provisions of the shareholders' agreement between the parties to prevent the plaintiff from selling his stock in the corporation to a third party, and (2) that the corporation violated its fiduciary duty as a pledgee of shares owned by him.
Burch joined the corporation as an employee in mid-1970, and at that time, entered into a "loan and stock repurchase" agreement whereby the corporation loaned $50,000 to him, taking his promissory note to secure the loan. As part of the same transaction, he then paid the $50,000 to the corporation in return for 5000 shares of the corporation stock. The promissory note given by Burch was unconditional and unsecured, except that the certificate of shares was retained by the corporation as a pledge against the note. In March of 1971, difficulties having arisen between Burch and other shareholders of the corporation, Burch was informed that he would be terminated as an employee of the company. *290 Burch then solicited and received an offer from a third party to purchase the 5000 shares and the corporation was properly notified of the proposed sale of the stock. The corporation refused to allow Burch to transfer the stock and this action insued.
Following the close of the plaintiff's evidence, the defendant moved for dismissal under C.R.C.P. 41(b). The trial court dismissed these two claims, without prejudice pending the outcome of this appeal, on the grounds that the stock purportedly issued to Burch was void ab initio under Colo. Const. Art. XV, Sec. 9. All other claims and counterclaims were dismissed with prejudice. The issues of the interpretation of the shareholders' agreement and the fiduciary duties of the corporation as a pledgee are not before this court.
We hold that the trial court erred in concluding that the shares in question were void ab initio and remand the case to the trial court for consideration of the other issues raised by the pleadings with respect to these two claims for relief.

I
The argument of the defendant corporation is essentially that the shares which were purportedly issued to the plaintiff are null and void, because in its view, the shares were issued in violation of Colo. Const. Art. XV, Sec. 9, and C.R.S. 1963, 31-4-5(2), which read, respectively:
"No corporation shall issue stocks or bonds, except for labor done, service performed, or money or property actually received, and all fictitious increase of stock or indebtedness shall be void."
"Neither promissory notes nor future services shall constitute payment or part payment for shares of a corporation."
The obvious policy behind this statute and the constitutional provision is to protect other stockholders of the corporation, creditors, and good faith future stockholders from the dilution of their investment by "watered" stock. Protected parties should be able to rely on the fact that the corporation exchanged its stock for cash or equivalent value. See Barnard v. Sweet, 74 Colo. 302, 221 P. 1093. The fact situation presented to us does not create such a danger and is not prohibited by either the statute or the constitution.
In order to come to this conclusion, we must make two initial observations. First, it should be noted that the form of the transaction does not control our decision. While the transaction was structured so that Burch appeared to be paying cash for the shares, it is clear that the substance of the transaction was the giving of his promissory note for the shares. It is admitted that no cash actually changed hands in the transaction but rather, it was carried out only by bookkeeping entries which gave the appearance of independence between the obligation on the promissory note and the payment for the shares.
On the other hand, we note that while the certificate of shares was apparently "executed" and "delivered," at least momentarily, to Burch, the corporation retained possession of and complete dominion over the certificate under the pledge agreement. We again look to the substance of this transaction rather than its technical form and hold that these shares were not "issued" within the meaning of Colo. Const. Art. XV, Sec. 9. Therefore, the transaction does not violate this constitutional provision.
The fact that the shares were not issued does not preclude the "creation" of the legal relationship between the parties which the issuance of the share certificate at a later time will represent. See Waterman, The Creation of Corporate Shares in Return for Promissory Notes, 7 Tex.L.Rev. 215 n. 1. In this case, a set of legal relationships arose between the parties which is directly analogous to those which arise when a person "subscribes" for the shares of a corporation.[1] *291 It is clear that subscription agreements are enforceable in Colorado (C.R.S.1963, 31-4-3) and it cannot be said that the subscribed shares in those cases are in any sense invalid. In fact, it is well established that subscribers may, and often do, receive many rights as shareholders, including voting rights, rights to dividends, right to inspection of corporate books and records, etc., before full payment is made. Note, The "Illegal" Creation of Shares In Return For Notes, 39 Yale L.J. 706; H. Henn, Law of Corporations § 169 (2d ed.). In the case before us, Burch was treated by the corporation as if he had been only a subscriber. Thus, the transaction in this case created a legal relationship in which Burch received not only the right to receive share certificates at a later date, but the equitable rights of a shareholder. Such rights are legally transferable. See Arfsten v. Higby, 150 Colo. 254, 372 P.2d 166.
The Supreme Court has impliedly recognized these principles in Haselbush v. Alsco of Colorado, Inc., 161 Colo. 138, 421 P.2d 113. In that case, the purchaser brought suit to cancel his promissory note which had been given in return for shares of the corporation. As in the case before us, the share certificate had been executed but retained by the corporation as security for the note. Referring to the purchaser as "a prospective stockholder," the court held that the constitutional provision was no bar to enforcement of the promissory note. Similarly, in our case, the fact that the constitution and the statute may prohibit execution and delivery of share certificates in exchange for promissory notes does not render the shares void. Boldt v. Motor Security Co., 74 Colo. 55, 218 P. 743.
It should be pointed out, however, that the shares which we recognize in this transaction are not to be considered fully paid up and non-assessable shares. This is, of course, the thrust of the statutory provision which precludes promissory notes from serving as final payment for the shares. The Supreme Court in Haselbush, supra, recognized this situation when it stated as follows:
"The statute does not forbid the corporation from taking a note or obligation from a prospective stockholder. On the contrary, it impliedly recognizes the right to do so, but declares that no such note shall be considered as payment, and no certificate shall issue until the note is paid."
We conclude that the contentions of the defendant are erroneous and hold that the shares in question, while they are not fully paid and non-assessable, are valid and were not created in violation of the pertinent constitutional and statutory provisions.

II
The trial court supported its decision that the shares were void under the constitutional prohibition with a finding that the transaction was entered into in bad faith. This "good faith" requirement was taken from the statement made by the Supreme Court in Haselbush, supra, to the effect that such a promissory note is only valid "when the transaction has been made in good faith." The trial court concluded that:
"All parties, including the plaintiff, knew that the transaction which they were proposing was not proper under the laws of our state. It seems to me that in view of that fact, it evidences bad faith on the part of all parties, plaintiff and defendants."
We think this finding erroneous. As this opinion has indicated, the transaction was proper under the laws of our state. Although they may have been attempting to structure a transaction which would avoid the prohibitions of the statutes and constitution which have previously been discussed, they, in fact, proceeded legally, if perhaps inadvertently so. Both parties relied on the advice of counsel in entering into the transaction and accepted the form of the transaction as it was finally presented to them, much in the same way that tax planning avoids certain statutory and regulatory *292 restrictions. As was pointed out in Denver Fire Insurance Co. v. McClelland, 9 Colo. 11, 9 P. 771:
"[T]o impute a knowledge of the probable construction the courts would put upon these statutes and articles of incorporation to determine questions raised upon a given contract proposed, is carrying the doctrine of notice to an extent which can only be denominated preposterous."
The facts before us do not justify a conclusion of bad faith which would nullify this transaction.
Since the trial court erred in finding the shares in question to be void ab initio, we reverse the dismissal of the second and third claims for relief and remand the cause to the trial court for further proceedings on the remaining issues raised by the pleadings.
COYTE and SMITH, JJ., concur.
NOTES
[1] If the giving of a note for shares is a "void" transaction, then it would seem that subscription agreements are equally invalid. Waterman, supra, at 243.