**GUARDIAN STATE BANK, a Utah corporation, Plaintiff and Appellee,**

v.

**Roy W. HUMPHERYS, Defendant and Appellant.**

**No. 19703.**

Supreme Court of Utah.

Sept. 28, 1988.

Stephen B. Mitchell, Salt Lake City, for plaintiff and appellee.

Ronald G. Schiess, L. Rich Humpherys, Salt Lake City, for defendant and appellant.

STEWART, Justice:

Guardian State Bank brought this action on a promissory note executed by appellant Roy W. Humpherys. From a summary judgment in favor of the bank, Humpherys appeals.

On July 11, 1979, Humpherys obtained a loan from Empire State Bank in the principal amount of $100,000, evidenced by a promissory note in favor of Empire for that amount plus interest. The note was due and payable in full on January 8, 1980. The loan was obtained to enable Humpherys to purchase the last $99,960 of the initial $2,000,000 stock offering of Empire. The stock offering consisted of 50,000 shares of stock at $40 per share, for a total offering price of $2,000,000. By his personal check dated July 9, 1979, drawn on his account at Valley Bank and Trust Company, Humpherys purchased $99,960 worth of Empire stock and signed a stock subscription agreement. On July 11, this check was deposited in a stock escrow account at First Security Bank in the same manner as all other proceeds of the stock offering. On the same date, Humpherys received a cashier's check for $100,000 from Empire, representing the loan proceeds, and deposited it into his checking account at Valley Bank and Trust Company.

At the time of the stock purchase, Stephen R. Anderson, an officer of Empire, allegedly represented to Humpherys that Empire would complete its $2,000,000 stock offering with his purchase and thereby meet the legal requirements to open for business. Empire in fact completed its stock offering July 11, 1979, with Humpherys' purchase, and on that date received approval from the State Department of Financial Institutions to release the escrowed funds and open for business.

On two occasions during 1980, Humpherys paid the interest on the note and Empire extended the repayment date and increased the interest rate. Humpherys paid no principal. Two years after the loan was made, on July 10, 1981, Humpherys once again paid the interest current, reduced the principal amount due by $10,000 and executed a new renewal note in the amount of $90,000 at a higher interest rate, due and payable January 6, 1982. This latter promissory note is the subject of this action.

After opening for business, Empire experienced severe financial problems resulting from lack of liquidity. Although Empire retained adequate capital, its shareholders faced the loss of their entire investment. In April 1982, Empire was merged into Guardian State Bank. After disclosure of the terms of the merger, Humpherys, as-

sisted by legal counsel, elected to transfer all his Empire stock to Guardian in exchange for the issuance to him of shares in Guardian Bancorp. He received 1.35 shares of Guardian Bancorp stock for each share of exchanged stock in Empire.

Humpherys failed to pay the note when due, and Guardian brought this action in October 1982. In response to Guardian's motion for summary judgment, Humpherys contended that the 1981 promissory note was a renewal of the 1979 promissory note in favor of Empire and that Empire had obtained the loans by fraudulent inducement. Humpherys asserted that Stephen R. Anderson represented to him that he would not be required to repay the loan, but that the note would be successively renewed until the dividends were sufficient to pay it. Humpherys further claimed that when the loan was made, Empire was not authorized to do business and had made the loan from its capital account. He also asserted that Anderson falsely represented that it was legal for Empire to lend money to Humpherys to purchase the stock and that Empire would not commence business until it had received $2,000,000 in stock sales apart from Humpherys' payment for his stock.

The trial court rejected Humpherys' defenses and granted summary judgment in favor of Guardian. Thereafter, Humpherys obtained new legal counsel who filed a motion to set aside the judgment on the basis of newly discovered evidence consisting of documents maintained by First Security Bank in connection with the Empire stock escrow account. In turn, the trial court partially vacated the summary judgment, but only as to the issues raised by the newly discovered evidence, i.e., whether, contrary to representations, Empire was substantially undercapitalized and whether improper payments were made from the stock escrow account prior to state authorization. Humpherys was specifically barred from relitigating the issues which had already been determined at the prior summary judgment hearing.

Humpherys thereupon amended his answer to include the new defenses. Guardian objected to Humpherys' defenses as being contrary to the trial court's order partially setting aside the summary judgment. At a hearing on both parties' motions for summary judgment, the trial court ruled that Humpherys' defenses were not based on the newly discovered evidence, but rather were efforts to relitigate issues already determined. Guardian was granted summary judgment on all issues.

This Court has often stated the standard of review on an appeal of a summary judgment:

> In reviewing a summary judgment, we must evaluate all the evidence and all reasonable inferences fairly drawn from the evidence in a light most favorable to the party opposing summary judgment to determine whether there is a material issue of fact to be tried.... The movant is entitled to summary judgment only if he is "entitled to a judgment as a matter of law" on the undisputed facts. Utah R.Civ.P. 56(c).

*Horgan v. Industrial Design Corp.*, 657 P.2d 751, 752 (Utah 1982) (citations omitted). A major purpose of summary judgment is to avoid unnecessary trial by allowing the parties to pierce the pleadings to determine whether there is a genuine issue to present to the fact finder. *Reagan Outdoor Advertising, Inc. v. Lundgren*, 692 P.2d 776, 779 (Utah 1984). Once a movant sets forth a factual basis for summary judgment, the opponent must respond with specific facts to show that there is a genuine issue for trial, and mere allegations or denials of a pleading or conclusions in an affidavit are insufficient to raise a genuine issue of fact. Utah R.Civ.P. 56(e).

### I.

Humpherys contends that there was a material issue of fact as to the existence of fraud in the inducement. He asserted by his affidavit that Empire, through its agent, intentionally misrepresented that Humpherys would not be required to pay the loan, but rather that the note would be renewed until the stock dividends were sufficient to pay it. Humpherys argues that fraud in the inducement is always a legally

sufficient defense to a promissory note and that the trial court erred in applying the parol evidence rule to bar this defense.

■ We need not decide whether the parol evidence rule would be a bar. The court below was correct in rejecting Humpherys' defense based on the alleged misrepresentation because Humpherys' affidavit in opposition to Guardian's motion for summary judgment contradicted his prior deposition testimony. For example, in his deposition, Humpherys testified:

Q. How did you anticipate paying that note?

A. I didn't give it any thought.

. . . .

Q. Did he tell you that the dividends would be sufficient to pay off this note?

A. I don't know whether he put it that way.

Q. He just told you that he anticipated the bank would make money and pay dividends to stockholders?

A. He said it should take care of debts and servicing, sure.

. . . .

Q. Okay. Was it your understanding that if the bank didn't pay you sufficient dividends to pay off this promissory note that you wouldn't have to pay it?

A. Not necessarily.

. . . .

Q. Did he tell you that if the bank didn't make money you wouldn't have to pay back the promissory note?

A. No, he indicated that the stock would increase in value and it would be easy to sell your stock and get your money back.

Yet in Humpherys' affidavit, he charged that Anderson represented that Humpherys would not be required to repay the loan, but that the loan would be renewed until the dividends were sufficient to pay the note. Clearly, the affidavit disputes his prior testimony and should be disregarded.

In ruling on a motion for summary judgment, a trial court may consider, together with the affidavits filed, "the pleadings, depositions, answers to interrogatories, and admissions on file." Utah R.Civ.P. 56(c). . . .

. . . The purpose of summary judgment is not to weigh the evidence. But when a party takes a clear position in a deposition, that is not modified on a cross-examination, he may not thereafter raise an issue of fact by his own affidavit which contradicts his deposition, unless he can provide an explanation of the discrepancy. . . . A contrary rule would undermine the utility of summary judgment as a means for screening out sham issues of fact.

*Webster v. Sill*, 675 P.2d 1170, 1172–73 (Utah 1983) (citations omitted).

## II.

Humpherys also contends that at the time of the making of the loan, Empire fraudulently misrepresented the extent of its capitalization. He asserts that Anderson represented that Empire had at least $2,000,000 in capital apart from Humpherys' investment, whereas Empire actually had only $1,900,000 ($2,000,000 less his investment) and was not authorized to do business. He argues that had he known that Empire was not capitalized in the amount of $2,000,000, he would have refused to enter into the agreement.

These allegations, however, are contrary to both the undisputed facts in the record and Humpherys' prior deposition testimony. Anderson approached Humpherys regarding the purchase of stock in an effort to reach Empire's initial capitalization requirement of $2,000,000 in its stock escrow account. The offering circular, read and signed by Humpherys, revealed each and every term of Empire's $2,000,000 stock offering of 50,000 shares at $40 per share. Humpherys repeatedly testified at his deposition that he knew his purchase of stock would be the last sale necessary to complete the stock offering. In other words, Humpherys was informed of the terms of the transaction and knew that his investment was a part of the $2,000,000 stock offering. Further, in regard to whether Empire was sufficiently capitalized and duly authorized to commence business

when it made the loan to Humpherys, the lower court clearly relied on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," to find that there was "no genuine issue as to any material fact and that [Guardian is] entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c).

██ Furthermore, Humpherys argues that Empire did not meet its capitalization requirement of $2,000,000 prior to making the loan and therefore lacked the legal capacity to make the loan and to enter into a contractual agreement to have it repaid. He points out that while the $2,000,000 capital requirement appeared to be satisfied upon the deposit of his check into the escrow account, that check had not cleared when the loan was made and would not have cleared but for the loan proceeds which were subsequently deposited into his account at Valley Bank and Trust Company. Thus, he asserts Empire had only $1,900,000 in escrow at the time the loan was made and illegally commenced operation as a bank. Humpherys also asserts that the loan was improperly made from capital in the escrow account prior to authorization.

Humpherys is technically correct in asserting that his check had not cleared his bank when the loan was made and that the loan enabled him to cover his check written two days before. However, the record makes clear that both First Security Bank (the escrow bank) and the State Department of Financial Institutions were satisfied that $2,000,000 was in fact on deposit with the receipt of Humpherys' check on July 11, even though that check had not cleared. For example, the affidavit of W. John Lamborn, assistant vice-president and assistant manager of the Trust Division of First Security Bank, reveals that "$2,000,000 principal deposits" and "interest earned on the deposited funds of $19,072.36" were on deposit in the escrow account as of July 11, 1979. Lamborn sent a letter and a copy of the account ledger to the Department of Financial Institutions to "certify" that the said funds "had in fact been received." The affidavit verifies that no funds were improperly released from the escrow account prior to authorization from the Department of Financial Institutions on July 11, 1979.

The affidavit of Richard L. Burt, chief examiner of the Department of Financial Institutions, verifies that the state authorized release of the stock subscription funds held in escrow on July 11, 1979, that Empire was authorized to commence business on that same day, and that no funds were improperly released from escrow prior to this authorization. Furthermore, the affidavit of Lynn Woolley, supervisor of banks of the Department of Financial Institutions, also verifies that it was proper for Empire, immediately after being authorized to commence business, to make an unsecured loan to a qualified borrower, even though the proceeds were used to cover the purchase of stock in the bank and were paid into the capital of the bank:

> The Department of Financial Institutions has not taken any action to in any way penalize Empire State Bank or Guardian State Bank for the manner in which Defendant's stock purchase was handled and does not intend to do so. The amount paid by Defendant for his Empire State Bank stock has always been included in the Bank's capital and the Department is not going to require any change in that regard.

Under the circumstances of this case, neither the lower court nor this Court could properly go behind the affidavits and question the judgment of the Department of Financial Institutions in authorizing a bank to commence operation. Based on the undisputed facts, the lower court correctly concluded that there was no genuine issue of fact for trial in regard to this defense to the promissory note.

### III.

██ Humpherys next contends that the entire transaction was illegal and void under the Utah Constitution, Article XII, section 5 and Utah Code Ann. § 16–10–18 (1987), both of which prohibit issuing stock in return for a promissory note or other

consideration which is not money, property, or labor actually performed. The trial court ruled that "[Humpherys] could not use the fact that he borrowed money from the Bank as a defense to pay back the loan" and that the illegality defense "is of no merit and should not apply in the circumstances where a debtor is trying to not pay the loan to a corporation, that that's not the purpose for that provision." We agree.

First, the stock was actually issued for money. The promissory note was executed for repayment of a loan, not for the issuance of stock. Second, Guardian is correct in arguing that the purpose of the cited constitutional and statutory provisions is to protect existing shareholders from a dilution of stock values by the subsequent issuance of stock for less than adequate consideration and to protect the public by insuring that the corporation's capital assets are real and do not merely reflect the indebtedness of a shareholder. *See Area, Inc. v. Stetenfeld*, 541 P.2d 755 (Alaska 1975); *Haselbush v. Alsco of Colorado, Inc.*, 161 Colo. 138, 421 P.2d 113 (1966); *Burch v. Exploration Data Consultants, Inc.*, 33 Colo.App. 155, 518 P.2d 288 (1973). The rationale of the Utah constitutional and statutory provisions does not apply to the facts of this case. Empire made a loan to a qualified borrower. The financial condition of Empire was not harmed nor were the interests of other shareholders put at risk when Humpherys utilized the loan proceeds for the purchase of stock in Empire rather than for another purpose.

## IV.

Finally, Humpherys asserts that he was denied due process of law when the lower court refused to allow him to conduct further discovery after the first and second summary judgments were granted and when the court struck from the record on appeal affidavits of Humpherys' former counsel, submitted under former Rule 75(m), Utah Rules of Civil Procedure (for present provisions, see R.Utah S.Ct. 11(g)). We find no error.

■ After the second summary judgment was granted in favor of Guardian, Humpherys filed affidavits of his former counsel, L. Rich Humpherys and Elwood Powell, purporting to set forth the oral arguments made but not recorded at the hearings on Guardian's initial motion for summary judgment. Humpherys then filed an amended designation of the record to include the affidavits in the record on appeal. Guardian moved to strike the affidavits, and Humpherys argued for their inclusion under Rule 75(m). Where no stenographic report of the evidence or proceedings at a hearing was made, Rule 75(m) allowed the appellant to prepare a statement of the evidence or proceeding from the best available means, including recollection, for use on appeal instead of a transcript. If an objection was interposed, the statement was submitted to the trial court for settlement and approval and, as settled and approved, was included in the record on appeal. Upon Humpherys' motion for settlement and approval, the court read and considered the affidavits and heard the testimony of L. Rich Humpherys and Elwood Powell concerning their recollection of what transpired at the prior hearings.

■ The court concluded that counsel had the opportunity to have their arguments reported, but neglected to do so. Further, the court ruled that the arguments of counsel at those hearings were not important to the summary judgment decision which was "based upon the evidence presented by the parties, including the affidavits submitted and the depositions received of Mr. Anderson and Mr. Humpherys, and the authorities cited in the extensive Memoranda filed." The court determined that the purpose of Rule 75(m) was "not to have the court attempt to recreate, based upon conflicting testimony of counsel, what oral arguments were made by counsel at a law and motion hearing" and struck the affidavits from the record. However, "for all purposes of clarification" and "for the benefit of the Supreme Court on appeal," the trial court made a record of what evidence was received at the prior hearings "so the Supreme Court can know what this court considered." This record was made by the

court with "a specific recollection having reviewed the file and listening to counsel as to the evidence that was received."

We hold that the lower court acted properly under Rule 75(m). After refusing to approve the affidavits as submitted, the court "settled" the issue by providing its own statement, based upon a specific recollection and appropriately included it in the record on appeal.

■ As to Humpherys' due process claims and the lower court's refusal to allow further discovery at the times the summary judgments were granted, we have thoroughly reviewed the record, including the transcripts of the proceedings below, and find these claims to be without merit. In fact, the opposite is true. It is clear that the trial court expanded the usual boundaries of fairness to accommodate Humpherys. He was given "more than his day in court" and a plenitude of time for discovery and argument. The proceedings were fair and "appropriate to the case and just to the parties involved." *Rupp v. Grantsville City*, 610 P.2d 338, 341 (Utah 1980).

AFFIRMED.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.