**Diane BRANAM, Plaintiff and Appellant,**

v.

**PROVO SCHOOL DISTRICT, a body politic, Defendant and Appellee.**

No. 20935.

Supreme Court of Utah.

Sept. 14, 1989.

Michael D. Esplin, Provo, for plaintiff and appellant.

Allan L. Larson, Christopher C. Fuller, Salt Lake City, for defendant and appellee.

ZIMMERMAN, Justice:

Plaintiff Diane Branam appeals from a summary judgment that dismissed her negligence action against the Provo School District. Branam had filed suit after the Provost Elementary School, one of the schools within the Provo School District ("the district"), removed percolating ground water from its basement in such a way as to cause the flooding of the basement of Branam's home. The district court granted the district's motion for summary judgment, holding that the suit was barred by governmental immunity. *See* Utah Code Ann. § 63-30-3 (1986). Branam challenges this ruling. We agree with Branam that her suit is not barred and reverse and remand the matter for further proceedings.

Because this is an appeal from a grant of summary judgment, we recite the facts in a light most favorable to the party against whom the judgment was entered. *See Zions First Nat'l Bank v. Clark Clinic Corp.,* 762 P.2d 1090, 1092 (Utah 1988); *cf. State v. Verde,* 770 P.2d 116, 117 (Utah 1989) (nature of trial court disposition dictates manner in which we state facts on appeal).

Branam's residence is located in Provo, Utah, and is to the north and west of the Provost Elementary School ("the school"). Between the school and Branam's home is a grassy field. Both the school and the grassy field are at a higher elevation than Branam's home. Several years before the events at issue, Branam's basement had been flooded when the school pumped a large amount of water onto the grassy field. For that reason, Branam telephoned the school in March or April of 1983, when the unusually heavy snowpack of the preceding winter in the mountains east of Provo had begun to melt, to inquire about any plans the school had to remove water from

its basement in the event that flooding occurred. Specifically, Branam requested that instead of pumping water from the basement onto the grassy field, the school pump it to the adjacent street, where it could drain harmlessly. A school official with whom Branam spoke assured her that the school would do as she requested.

In June of 1983, the school began pumping ground water that had percolated into its basement onto the grassy lot adjacent to Branam's home. It began removing water with four pumps, but used as many as fifteen before the seepage stopped several months later. Approximately a day after the school began pumping, Branam discovered water seeping into her basement from the east. She went to the school to notify the principal that her property was being flooded. The principal referred her to another school official. This second official declared that he was unconcerned with any consequences to Branam's home from the pumping, refused her request that the water be pumped to the street, and said that if she had a problem, she could "sue the school district." However, some four or five days after the pumping began, the school did make an effort to deposit the water from its basement into the street. This was done by enclosing a portion of the grassy lot with sandbags to create a reservoir into which the water was pumped and then transporting the water to the street through an eight-inch pipe. This did not, however, end Branam's problems. The sandbag reservoir leaked, and this water spread out over the rest of the grassy field, eventually finding its way into Branam's basement.

Branam filed an action against the district in April of 1984. She alleged that the water removal operation had been conducted negligently and sought to recover approximately $12,000, which represented the water damage to her home. In August of 1985, the district court granted the district's motion for summary judgment and dismissed Branam's action with prejudice. The court ruled that the 1984 amendment to section 63–30–3 of the Code, which purports to immunize "governmental entities" from harm resulting from the "management of floodwaters," was retroactive and applied in this case. The court then held that this amendment gave the district absolute immunity for any injuries to Branam's property that arose out of the water removal activities. She appeals.

Before addressing Branam's first argument, we note that summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Ron Case Roofing and Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1385 (Utah 1989); *Geneva Pipe Co. v. S & H Ins. Co.*, 714 P.2d 648, 649 (Utah 1986). In deciding whether the trial court properly granted judgment as a matter of law to the prevailing party, we review the trial court's decision on legal questions for correctness. *Ron Case*, 773 P.2d at 1385; *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987); *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985).

The statutory provision relied on by the district court in granting summary judgment for the district is section 63–30–3 of the Code, which currently provides as follows:

> Except as may be otherwise provided in this *chapter*, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function, governmentally-owned hospital, nursing home, or other governmental health care facility, and from an approved medical, nursing, or other professional health care clinical training program conducted in either public or private facilities.
>
> *The management of flood waters and other natural disasters and the construction, repair, and operation of flood and storm systems by governmental entities are considered to be governmental functions, and governmental entities and their officers and employees are immune from suit for any injury or damage resulting from those activities.*

Utah Code Ann. § 63–30–3 (1986) (emphasis added).

The italicized material was added to 63–30–3 by the legislature after the events

that are the subject of this suit. The 1984 amendment, effective March 29, 1984, substituted "chapter" for "act" in the first paragraph and added the entire second paragraph. The second paragraph was further amended, effective April 29, 1985, by the addition of the phrase "and other natural disasters." The statute now reads as it did when the district court granted the motion for summary judgment.

Branam challenges the district court's ruling on several grounds. First, she claims that her action against the district is not barred by the 1984 amendment because the school's removal of water from its basement does not fall within the terms of that amendment. Second, she asserts that even if the school's water removal efforts are covered by section 63–30–3, the first sentence of that section preserves waivers of immunity "as may be otherwise provided by this chapter" and section 63–30–9 contains such a waiver for harm caused by "a dangerous or defective condition of any public ... reservoir,"[1] such as the one constructed by the school on the grassy lot. Third, Branam argues that the 1984 amendment should be given prospective effect only, so as not to bar her earlier-arising action. Finally, if the 1984 amendment to section 63–30–3 is applied retroactively to the facts of this case, Branam contends that section 63–30–3 should be struck down as violative of the guarantee in article I, section 22 of the Utah Constitution that "[p]rivate property shall not be taken or damaged for public use without just compensation." Utah Const. art. I, § 22.

■ We are persuaded by Branam's first argument and find it unnecessary to address her other claims. In detail, Branam's first argument is that although section 63–30–3 provides that "governmental entities are immune from suit for any injury which results from the exercise of a governmental function" and that the "management of flood waters ... and the construction, repair, and operation of flood and storm systems by governmental entities are considered to be governmental functions," this language operates only to grant immunity to governmental agencies that manage flood waters and construct and operate flood and storm systems for the protection of the public at large. In the instant case, Branam argues, the school's activities cannot be legitimately termed the "management of flood waters" for the general protection of the public or the "construction, repair, [or] operation of [a] flood and storm system[]"; rather, the school was simply pumping water out of its basement like any other property owner seeking to avoid damage to its property from percolating water. Finally, Branam notes that the district lacks police powers and certainly does not have as one of its charges the management of flood waters or the construction or operation of flood systems.

■ In essence, we agree with Branam's interpretation of the statute. Even if the 1984 amendment to section 63–30–3 applies retroactively to this case, a question we expressly decline to address here, we cannot accept the district's argument that in removing water from its basement, the school was engaged as a governmental entity in the "management of flood waters" so as to confer immunity upon it. Nothing in the language of either section 63–30–3 or any other part of Senate Bill 97, 1984 Utah Laws ch. 33, § 1, the comprehensive flood waters management bill that added the second paragraph to section 63–30–3, indicates that the legislature intended to entirely immunize any entity entitled to the label "governmental" from anything it might do in any capacity with what could be termed "flood waters." Rather, the legislation was concerned about potential liability from police power measures taken to protect public and private property from natural disasters such as the heavy flooding that occurred in many locations in Utah in 1983. Accordingly, we construe the language of section 63–30–3 as only clarifying that for the purposes of that section, the term "governmental function" is to include actions undertaken by governmental entities that have the responsibility to protect

---

1. Section 63–30–9 of the Code provides: "Immunity from suit of all governmental entities is waived for any injury caused from a dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement. Immunity is not waived for latent defective conditions." Utah Code Ann. § 63–30–9 (1986).

the general public through the "management of flood waters" and the "construction, repair, and operation of flood and storm systems" when those actions are undertaken in furtherance of the discharge of those responsibilities.

In the present case, the district certainly does not fall within the intendment of the statute. It was not charged with the responsibility to deal with flood waters or to construct flood or storm systems, and the school did not act to protect the public at large from flood waters. Its actions were indistinguishable from those any other landowner might have taken to protect its property. As such, it enjoys no immunity from Branam's suit under section 63–30–3 of the Code.[2]

We reverse and remand for further proceedings.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

2. See *Johnson v. Salt Lake City Corp.*, 629 P.2d 432 (Utah 1981), and *Standiford v. Salt Lake City Corp.*, 605 P.2d 1230 (Utah 1980), holding that the test for determining governmental immunity under the first paragraph of section 63–30–3 is whether the activity under consideration is of such a unique nature that it is only performable by a governmental agency.