Keith WILLIAMS, Jr., Plaintiff and Appellant,

v.

CARBON COUNTY BOARD OF EDUCATION, Defendant and Appellee.

No. 870290.

Supreme Court of Utah.

Sept. 22, 1989.

Duane R. Smith, Marilynn P. Fineshriber, Salt Lake City, for plaintiff and appellant.

Allan L. Larson, Jody K. Burnett, Anne Swenson, Salt Lake City, for defendant and appellee.

HOWE, Associate Chief Justice:

Plaintiff Keith Williams, Jr., brought this action for damages to his real property allegedly caused by defendant Carbon County School District's negligent construction and resurfacing of a parking lot on adjoining public school property. The trial court granted defendant's motion for summary judgment and dismissed the action under the general immunity provision of the Utah Governmental Immunity Act. Utah Code Ann. § 63–30–3 (1986). Plaintiff appeals.

In March 1983, plaintiff purchased a house and lot in Helper, Utah. The property is adjoined on the south by the Sally Mauro School, an elementary school that is owned and maintained by defendant school district. The school and attendant grounds were in place several years prior to plaintiff's purchasing his property. In August 1984, the school parking lot, which is adjacent to plaintiff's driveway, was resurfaced. From that time forward, on numerous occasions, runoff surface waters from the parking lot flooded his property. He contends that defendant negligently resurfaced the parking lot so that surface waters drained onto his property rather than into a gutter or storm drain running in front of the school. In September of that year, for example, surface drainage from the parking lot flooded plaintiff's property during a rainstorm. Plaintiff claims that such intrusion of runoff surface waters continued on a "regular and frequent basis" and particularly, as alleged in his complaint, from April 1985 through February 1986. At oral argument, plaintiff's counsel asserted that the problem still existed.

The surface of the parking lot is at a higher level than plaintiff's driveway and yard. Defendant constructed a cement diversion curb, approximately four inches high, along the border of the parking lot and plaintiff's property line in order to retain any runoff surface waters and allow them to flow into the gutter or storm drain in the street in front of the properties. According to plaintiff, however, these efforts to retain the runoff surface waters were ineffective and the waters continued to cascade over the curb instead of into the gutter, flooding his property. Further, the source of the surface water was not always natural. In one instance, flooding resulted from water that was pumped from a manhole onto the parking lot, and on other occasions, water would flow over the parking lot onto plaintiff's property when other storm drains were clogged. It is conceivable, plaintiff also contends, that runoff surface waters from defendant's sprinkling system might also be a source of flooding.

It is undisputed that the damages suffered by plaintiff are substantial and continuing and include the flooding of his window wells and basement, damage to carpets and sheetrock, and the cracking of his driveway. In defense to plaintiff's claims for damages, defendant asserted "absolute immunity" under section 63–30–3, taking the position that its efforts to retain and control the runoff surface waters with a diversion curb and gutters are considered to be "management of flood waters" and the "construction, repair, and operation of flood and storm systems by [a] governmental entit[y]." Utah Code Ann. § 63–30–3 (1986). In granting summary judgment in favor of defendant, the trial court agreed:

> Section 63–30–3, as amended, clearly states that the defendant, as a governmental entity, is immune from suit for any injury or damage resulting from activities incident to the management of

flood water and the construction and operation of flood and storm systems. This immunity is complete whether negligent or not if the activity is incident to the management or operation of flood or storm systems.

The Complaint alleges in Paragraph 2, that the defendant's drainage ditch was blocked and flooded plaintiff's property, and Paragraph 4 of the Complaint lists various dates that flood water from the school yard came onto plaintiff's property resulting in alleged damage.

Clearly the allegations of the Complaint state a claim for damages resulting from the way the defendant managed its flood water or storm systems.

We disagree and reverse and remand for trial.

Our general governmental immunity provision is section 63–30–3, which states in pertinent part:

Except as may be otherwise provided in this chapter, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function. . . .

The management of flood waters and other natural disasters and the construction, repair, and operation of flood and storm systems by governmental entities are considered to be governmental functions, and governmental entities and their officers and employees are immune from suit for any injury or damage resulting from those activities.

The first paragraph of this section establishes immunity from suit for injuries resulting from the exercise of a governmental function, *subject to exceptions*. The second paragraph was added by a 1984 amendment clarifying flood control activities as governmental functions for purposes of governmental immunity. The amendment was prompted by unprecedented flooding along the base of the Wasatch mountain range, particularly in Salt Lake County, during the spring runoff of 1983. It is argued, however, that the language of the second paragraph which provides that "governmental entities and their officers and employees are immune from suit for any injury or damage resulting from those [flood control] activities" confers "absolute immunity" on governmental entities in flood water management, separate and apart from the initial language of paragraph one granting immunity subject to exceptions.

■ We do not need to reach here the question of whether the second paragraph of section 63–30–3 provides "absolute immunity" for the flood control activities of governmental entities. That is because we hold that defendant's activities in the instant case simply do not come within the contemplation of paragraph two. In reviewing a summary judgment, we must evaluate the facts and all reasonable inferences fairly drawn therefrom in a light most favorable to the party opposing summary judgment. *Guardian State Bank v. Humpherys*, 762 P.2d 1084, 1086 (Utah 1988); *Horgan v. Industrial Design Corp.*, 657 P.2d 751, 752 (Utah 1982). Under this standard of review, the facts in the record clearly indicate that plaintiff's damages from the runoff surface waters which are the subject of this action are not the result of defendant's "management of flood waters and other natural disasters [or] the construction, repair, and operation of flood and storm systems." Defendant school district has no such statutory responsibility. *Branam v. Provo School District*, 780 P.2d 810 at 813 (Utah 1989). Rather, plaintiff's damages appear to be the result of defendant's 1984 resurfacing of the school parking lot, which caused the runoff to flow onto plaintiff's property. The fact that defendant constructed a diversion curb along the edge of the parking lot in an effort to retain the runoff surface waters and divert them into a storm drain or gutter in front of the properties does not change our conclusion. We do not believe it was the legislature's intention in enacting the 1984 amendment to shield defendant from possible liability for damages arising from its negligence in the resurfacing of a parking lot, a question of fact to be determined on remand. Like private property owners, owners of public property

must exercise reasonable care in controlling surface water runoff.

■ We further note that as respecting any immunity that might be imposed by the first paragraph of section 63–30–3, immunity has been waived under section 63–30–9:

> Immunity from suit of all governmental entities is waived for any injury caused from a dangerous or defective condition of any public building, structure, dam, reservoir *or other public improvement*. Immunity is not waived for latent defective conditions.

(Emphasis added.) The word "injury" means "damage to or loss of property, or any other injury that a person may suffer to his person, or estate, that would be actionable if inflicted by a private person or his agent." Utah Code Ann. § 63–30–2(5) (Supp.1988). We have ruled:

> This broad definition of injury when construed in connection with the language of [section 63–30–9] indicates a legislative intent to include within the waiver of immunity an action for private nuisance insofar as the action is predicated on a dangerous or defective condition of a public improvement that unreasonably interferes with the use and enjoyment of the claimant's property.

*Sanford v. University of Utah*, 26 Utah 2d 285, 292, 488 P.2d 741, 745 (1971); *Parrish v. Layton City Corp.*, 542 P.2d 1086, 1089 (Utah 1975). Clearly, plaintiff's action in the instant case may be considered an action for private nuisance predicated on the alleged defective condition of defendant's resurfaced parking lot, the result of which unreasonably and substantially interferes with the use and enjoyment of his property by the intrusion of runoff surface waters and flooding. *See also Vincent v. Salt Lake County*, 583 P.2d 105, 108 (Utah 1978); *Sandifer Motors, Inc. v. City of Roeland Park*, 6 Kan.App.2d 308, 311, 628 P.2d 239, 243 (1981). It is precisely the type of action in which immunity, if imposed by the first paragraph of section 63–30–3, is waived by section 63–30–9.

The trial court erred in granting summary judgment in favor of defendant based on the governmental immunity provisions of section 63–30–3. We reverse and remand.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.