# Richmond

## Southern Railway Company v. S. F. Jefferson.

June 10, 1946.

Record No. 3032.

Present, All the Justices.

The opinion states the case.

*Thomas B. Gay* and *A. M. Aiken,* for the plaintiff in error.

*Joseph Whitehead, Jr.,* and *Eugene C. Hurt, Jr.,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

S. F. Jefferson was the plaintiff in the trial court and is the defendant in error here. He is a farmer residing on his farm in Pittsylvania county, Virginia, about three miles north of the town of Chatham. This farm lies along the right-of-way of the main line of the Southern Railway Company and is east of the railway line. Adjacent to the farm there is a fill made of earth to support the railway tracks. A small branch runs under the track and through the fill by means of a culvert, of rock and concrete, which is 3 x 4 feet presenting 12 square feet of aperture. The culvert was constructed when the railway line was built, which was sometime in the sixties. A pipe four inches in diameter would conduct or accommodate all the water of the branch in normal weather conditions.

In 1923, Mr. Jefferson built a tobacco barn on his land, about 275 feet downstream from the culvert and about 50 feet from the branch bank. The barn was situated on a position on the land of an elevation of 1 9/10 feet above the bed of the stream and directly in front of the culvert, that is, a straight line projected from the culvert would strike the barn, but the branch makes a curve to the right.

During the night of September 18 and 19, 1944, this barn was washed away and totally destroyed. Just before and during this period there occurred in this vicinity one of the

heaviest and most disastrous rain falls that ever happened within the memory or knowledge of men living in that community. Some of its results were simply appalling. The town of Chatham, in consequence, was without water for three days. It was without highway ingress or egress for that period. The railway could run no trains for three days. Fifty or more highway bridges in Pittsylvania county were completely or partially washed away. Flowing by Chatham, and within two miles of Mr. Jefferson's branch, is Cherry Stone Creek, which rose 28 feet at Chatham and washed away a flour mill that had stood near the creek unharmed since the Civil War. White Thorn Branch, a few miles from Jefferson's branch, rose 16 feet where it crosses U. S. Highway 29, and this was so sudden that an automobile in which three women were traveling and which had stopped before crossing the highway bridge was washed away and came to rest in a swamp. The women had to take off their clothes and struggle out to avoid being drowned. Another creek a few miles distant washed away a mill and deposited it in the middle of one of the state highways. The branch that washed the barn away rose only 5 feet, but a small branch near by rose 6 feet. This latter stream, however, had nothing to do with the destruction of the barn.

The drainage area of the branch above the culvert was estimated by engineers at from 130 to 160 acres. Mr. Jefferson instituted suit against the Railway Company for damages on account of the loss of his barn, based on two alleged acts of negligence:

(1) That the culvert was too small to discharge the water that might be anticipated to be brought to it;

(2) That the aperture was obstructed to the extent of 20 to 25% of its capacity by the growth of honeysuckle which had negligently been allowed to accumulate.

It does not appear how or when the barn was actually washed away. It was standing in the afternoon of September 18 and continued so at dark. The next morning it was gone and the indications, consisting of debris and marks on

the trees and terrain, showed that the waters of the branch had risen 5 feet above its normal bed.

Trial was had before a jury which rendered a verdict against the Railway Company in favor of the plaintiff for $750.00, with costs and interest, which was confirmed by the judgment of the court.

At the conclusion of the plaintiff's evidence, the defendant moved to strike the evidence on the ground that it did not show that the damage suffered by defendant was the proximate result of the negligence of the defendant. The motion was overruled. When all of the evidence was in, the defendant renewed the motion to strike on the same ground, which was also overruled. The Railway Company contended that the sole proximate cause of the plaintiff's damage was occasioned by the act of God; that the flood from which the injury resulted was phenomenal and thus was not to be anticipated or foreseen.

Mr. J. S. Carter is a civil engineer of some twenty-five years experience. For a period of three years he was employed with the State Highway Department, as resident engineer for Pittsylvania county. He was county engineer for thirteen years and is now Director of Public Works and Engineer for the town of Chatham. A bit of his testimony will show to some extent the extraordinary intensity of the rainfall during the period with which we are concerned. With reference to the height that the water rose at the Chatham plant, he was asked:

"Q. How high did the water rise at that particular point?"

"A. About 14 feet in the plant, I think."

"Q. In the building?"

"A. Yes."

"Q. How far was that from the bed of the creek?"

"A. The building is located about 200 feet from the edge of the creek."

"Q. Mr. Carter, did you at the request of Judge Aiken and myself, make a survey estimate of this creek out here that overflowed Mr. Jefferson?

"A.   Yes, I went out and inspected it.   I did not make any map or anything of that kind."

"Q.   You made some measurements to see what the area of the water shed was?"

"A.   Yes, Sir."

"Q.   What was that?"

"A.   I estimated about 150 acres."

"Q.   What type of land is it?"

"A.   It is rolling agricultural land.   Part of it is in woods."

"Q.   We expect to show that there was a culvert in that railroad that was 3½ x 4 feet.   Could you tell from your experience and from your knowledge of engineering whether or not that culvert was sufficient to carry off the normal waterfall and any extra rainfall which might be anticipated in that area?"

"A.   Yes, Sir.   I checked that size.   I was told by one of the representatives of the Railroad Company that that was the size of the culvert.   I checked the necessary drainage area for 150 acres and I consider that ample for that size block of land."

\*          \*          \*          \*          \*          \*

"Q.   In your memory, did you ever know any rain approaching this?"

"A.   No, I did not.   The water plant in 1940—we had high water that was said to be about a foot above anything else that any water had ever been known since the plant was built, which has been in operation about twenty-five years, and this high water last summer was over 8 feet above the water mark of 1940."

In the case of *Richmond* v. *Cheatwood*, 130 Va. 76, at page 83, 107 S. E. 830, is found a statement of the applicable law written by Kelly, P., which is this:

"The law is perfectly well settled that no person or corporation has a right to construct a culvert over a natural watercourse in such manner as to obstruct the flow of the stream and throw its waters back on another owner's

property to its injury, and the culvert or opening must be sufficient to accommodate, not only the natural and normal flow of the stream, but such abnormal and excessive flow as may *reasonably* be anticipated in times of high water and flood. *There is no duty to provide for floods so unusual and extraordinary as to bring them within the category of an 'act of God'.*" (Italics supplied.)

See also, Am. Jur. 38, p. 721, Sec. 66.

We are mindful of the rule that requires the facts to be received and stated in the most favorable light that plaintiff's evidence places them. It is true that there is credible evidence that the capacity of the defendant's culvert was diminished as much as 25% by its obstruction by honeysuckle being allowed to grow in it. But the evidence as a whole is convincing that this was not the proximate cause of the damage. The floods were "so unusual and extraordinary as to bring them within the category of an 'act of God'." The opening in the culvert, subject to the diminution, was adequate to carry off the water of any rainfall that any reasonable person was justified in anticipating. The uncontradicted facts justify the statement that the barn would have been washed away by the branch had there been no culvert or railway.

The plaintiff's theory was that the water was caught and dammed up behind the fill and that it broke through and carried away the barn. There is no satisfactory proof of this. No one knew how it happened. The contention that the negligence of the Railroad Company was the proximate cause of the loss sustained by the plaintiff is not sustained, accordingly we reverse the judgment of the trial court and enter judgment for the defendant, the Southern Railway Company.

*Reversed.*