No. 39,121

HERMAN A. GERBER and VIRGINIA GERBER, *Appellees,* v. J. D. MC-CALL, an individual doing business under the firm name and style of MCCALL SERVICE STATION, *Appellant.*

(264 P. 2d 490)

Opinion filed December 12, 1953.

*Charles W. Lowder* and *Blake A. Williamson,* both of Kansas City, argued the cause, and *William Drennan, Otto Ziegelmeyer, James K. Cubbison* and *Lee Vaughan,* all of Kansas City, were with them on the briefs for the appellant.

*Joseph P. Jenkins,* of Kansas City, argued the cause and *Joseph Cohen, Charles S. Schnider, John E. Shamberg, Thomas E. Joyce* and *Norma Braly,* all of Kansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This case is an aftermath of the Great Flood of 1951 in the valley of the Kansas (Kaw) River, and is an action to recover damages for the destruction by fire of plaintiffs' warehouse, alleged to have been the proximate result of defendant's negligent operation of his gasoline filling station after being warned of the imminence of a flood.

Defendant has appealed from an order overruling his demurrer to the second amended petition on the ground that pleading fails to state facts sufficient to constitute a cause of action.

Because of the nature of the question involved, the second amended petition, omitting the caption and prayer, will be set out in full:

"Come now the plaintiffs, and for their cause of action against the defendant, allege and state:

"1. That they are citizens and residents of Kansas City, Wyandotte County, Kansas, and are the owners of the real property commonly known and numbered as 2417 Metropolitan, Kansas City, Kansas, which properly included thereon prior to July 13, 1951, a warehouse, offices and other improvements. That in said building plaintiffs at all the times herein mentioned operated a transfer business and storage warehouse under the firm name and style of Antone Transfer and Storage Company.

"2. That at all the times herein mentioned, defendant was the owner and operator of a gasoline and service station business known under the firm name and style of McCall's Service Stations. That defendant owns and operates a gasoline and service station located at 2425 Metropolitan, Kansas City, Kansas. That said gasoline and service station was and is located on the same side of the street and approximately 50 feet west of plaintiffs' said property. That at said gasoline and service station said defendant was engaged in the business of servicing automobiles and other vehicles and selling and storing gasoline, kerosene, naptha, lubricating oils and greases, and other highly inflammable and volatile fuels and materials, the exact names and better description of such other inflammable fuels and materials being within the sole and exclusive knowledge of defendant, and not being known to plaintiff and therefore not set forth herein. That at all the times herein complained of said defendant owned and maintained storage tanks of varying sizes wherein said defendant stored and kept the products hereinabove mentioned. That defendant also maintained at or on said gasoline and service station and premises electric lights and signs, automatic air compressors, electric motors, pumps and lifts, and various electrically charged wires and wiring.

"3. That on or about the 13th day of July, 1951, at or about the hour of 1:00 o'clock A. M. said defendant, his agent, servant and employee, whose name or better description of whom plaintiffs are unable to state, but who was the agent of said defendant in charge of the service station above described, was orally notified by police officers of the city of Kansas City, Kansas, whose names are unknown to plaintiffs and therefore not set forth herein, of the imminence of a flood. That the danger of said flood was a matter of common knowledge throughout Kansas City, Kansas, and in particular, the Armourdale District, at said time. That thereafter on said date, a flood did occur, the flow of water coming from the west. That because of the carelessness, recklessness and negligence of said defendant, his agent, servant and employee, the operator of defendant's said service station, the highly volatile and inflammable fuels and materials hereinabove mentioned, were caused and permitted to come in contact with the said electric lights and signs, automatic compressors, electric motors, pumps and lifts and electrically charged wires and wiring, all located on said premises, and owned and controlled by defendant, so that by reason thereof a destructive explosion and fire was caused to occur on defendant's premises. That prior to and at the time of the acts of negligence and carelessness of defendant herein complained of, the water comprising said flood was flowing eastward, and that the said eastward flow carried said fire to the east and against and upon plaintiffs' said warehouse building, thereby causing the same to be consumed by fire and completely destroyed.

"4. That said fire and explosion and the resulting destruction of plaintiffs' said warehouse building were caused wholly and solely by reason of the care-

lessness, recklessness and negligence of the defendant, his agent, servant and employee, acting as aforesaid, in the following particulars, to-wit:

"A. In that said defendant knew, or by the exercise of reasonable care, prudence and caution, could have known, or could have reasonably anticipated that the forces of nature by water would cause the said highly volatile and inflammable materials and fuels located on defendant's said premises to come into direct contact with said electrically charged wires and machinery, and that great danger of fire and explosion would arise by reason thereof, and that the eastward flow of the water of said flood would carry said fire in the direction of and upon plaintiffs' premises and property, said defendant, his agent, servant and employee, as aforesaid, negligently failed to see that the electrical current was interrupted in said wires and machinery, and negligently failed to use any or reasonable care to see that said current was so interrupted so that danger from fire and explosion could be prevented therefrom.

"B. In that although defendant knew that its tanks and premises and the tanks and premises of other filling station and oil companies in the immediate vicinity of defendant's premises contained dangerous inflammable and explosive materials, and that said materials were lighter than water and would float at the top thereof, and would be caused to come in contact with said electrically charged wires and machinery, and cause the same to be ignited by charges of electricity therefrom, yet defendant negligently failed to take any precautions to prevent said danger of ignition, such as disengaging the master switch in said station or pulling the fuses out of the fuse box, but on the contrary, permitted electric lights to burn and automatic machinery to function.

"5. That by reason of the negligence of said defendant as aforesaid, plaintiffs' warehouse building of the reasonable value of $58,913.95, was totally destroyed. That the contents of said warehouse belonging to plaintiffs of the reasonable value of $10,878.36 were burned and destroyed. That an itemized list of said contents is hereto attached, marked Exhibit 'A' and made a part hereof. That in addition thereto said plaintiffs were prevented, because of the destruction of said property, and their inability to locate and rent a substitute location for their said business, from carrying on their transfer and storage business for a period of four months at a loss to them in the sum of profits of approximately $4,000.00.

"6. That said fire, the destruction of plaintiffs' property and resulting loss to them, was caused wholly and solely by reason of the carelessness and negligence of said defendant by and through his agent, servant and employee above described, who at all of the times herein mentioned was acting for and on behalf of said defendant in the furtherance of defendant's business and in the course of his employment."

In passing, we take note of the fact that in their brief plaintiffs state that in paragraph 3, *supra,* the reference to the "Armourdale District" is a typographical error and that "Argentine District" was intended.

The crux of defendant's contention is that under the circumstances alleged the probability of fire and explosion was too remote and very

highly improbable; that the fire was a direct result of a devastating flood—an Act of God—for which defendant is not liable; and that if defendant was in any manner negligent, which is denied, his negligence was too remote to be actionable.

Plaintiffs, on the other hand, contend their damages were not the result of an Act of God for which defendant is not responsible, but rather, were the result of an act of negligence cojoined with an Act of God, which combined to produce the resulting damage.

In their briefs the parties make extensive arguments concerning actionable negligence, proximate cause, the doctrine of foreseeability of the consequences of one's acts with respect to remoteness, and negligent conduct coupled with Acts of God, and cite numerous authorities, among them being *Cleghorn v. Thompson,* 62 Kan. 727, 64 Pac. 605, 54 L. R. A. 402; *Rodgers v. Railway Co.,* 75 Kan. 222, 88 Pac. 885, 121 Am. St. Rep. 416, 10 L. R. A. (N. S.) 658; *Lewis v. Street Railway Co.,* 101 Kan. 673, 168 Pac. 856; *Kroll v. Railroad Co.,* 106 Kan. 294, 187 Pac. 661; *Richards v. Kansas Electric Power Co.,* 126 Kan. 521, 268 Pac. 847; *Smith v. Mead Construction Co.,* 129 Kan. 229, 282 Pac. 708; *Rowell v. City of Wichita,* 162 Kan. 294, 176 P. 2d 590; *Atherton v. Goodwin,* 163 Kan. 22, 180 P. 2d 296, and *Shideler v. Habiger,* 172 Kan. 718, 243 P. 2d 211.

No effort to review in detail what was said in those decisions will be made. Each stands upon its own footing as applied to the facts there involved. Without attempting to delve into the many facets of the principles here involved, we confine ourselves strictly to the question whether, under all of the facts and circumstances disclosed by plaintiffs' allegations, it can be said that a cause of action for negligence is stated.

As a starting point, reference is made to a few general rules laid down in the last of the above-cited authorities, the recent Shideler case:

"In an action for damages sustained as the result of negligence, the negligence charged must have been the proximate or legal cause of the injury." (Syl. 1.)

"The proximate or legal cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act." (Syl. 2.)

"Natural and probable consequences are those which human foresight can anticipate because they happen so frequently they may be expected to recur." (Syl. 3.)

"While it is not a necessary element of negligence that one charged with

negligence should have been able to anticipate the precise injury sustained, a person is not charged with all possible consequences of his negligent acts. He is not responsible for a consequence which is merely possible according to occasional experience, but only for those consequences which are probable according to ordinary and usual experience." (Syl. 4.)

In this connection we repeat, in substance, the very realistic question asked by defendant in his brief:

Could a person of ordinary caution and prudence, in the case at bar, early in the morning of July 13, 1951, and prior to the flood, even though notified "of the imminence of a flood," have foreseen that a flood of the greatest magnitude in the history of the state would occur; that it would reach the area where defendant's filling station was located; that by merely leaving the electricity on in the service station premises operated by him, and in which gasoline, lubricating oil, greases and other inflammable fuels were used and stored for the purpose of servicing automobiles and other vehicles, a flood, if it did occur, would not only reach the premises but would engulf and pass over or around them sufficiently deep and with sufficient force to cause inflammable material stored in "storage tanks of varying sizes" to somehow and in some manner rise to the surface and escape in such quantity and under such conditions as to come in contact with electric lights and signs, wiring and electrical equipment used in connection with the operation of the filling station, and that by merely coming into contact therewith a destructive explosion and fire would ensue, and that such fire would continue to burn and be carried by the flow of water away from the premises eastward and set fire to and destroy a warehouse building located east of defendant's property?

In our opinion the question must be answered in the negative. In the first place, this court takes judicial notice of the unprecedented magnitude of the flood in question and of its devastating effects and results. History has already recorded them. Viewing the matter in the light of "hindsight," it is undoubtedly a fact that everyone in the path of the flood, had he known of its proportions, would have taken steps and measures different from those which were taken. The trite, but familiar expression—"hindsight is always better than foresight," is all the more meaningful when that frailty of human nature is coupled with an Act of God such as occurred in the Kaw Valley on July 13, 1951.

Tested by the general rules quoted *supra,* we are unable to say that under all of the facts and circumstances the failure of defend-

ant to take measures "such as disengaging the master switch in said station or pulling the fuses out of the fuse box," constituted negligence. In fact, the acts of defendant, even though held to be negligent, were not the proximate or legal cause of plaintiffs' damage. The proximate cause of their damage was the flood!

The order of the lower court is therefore reversed with directions to sustain the demurrer to the second amended petition.