ROCKY MOUNTAIN THRIFT STORES,
INC., et al., Plaintiffs and Appellants,

v.

SALT LAKE CITY CORPORATION, et
al., Defendants and Appellees.

No. 20513.

Supreme Court of Utah.

Dec. 14, 1989.

Wesley F. Sine, Marcus G. Theodore, Salt Lake City, for plaintiffs and appellants.

Roger F. Cutler, David L. Wilkinson, Paul M. Warner, Kevan F. Smith, Allan L. Larson, Christopher C. Fuller, Salt Lake City, for defendants and appellees.

HOWE, Associate Chief Justice:

Plaintiffs are owners and proprietors of commercial properties on three city blocks abutting North Temple Street in Salt Lake City, Utah. They brought this action against defendant governmental entities for damages caused their businesses by defendants' alleged negligent mismanagement of flood waters during the 1983 spring runoff and for compensation for inverse condemnation of their property

rights of ingress and egress. The trial court granted defendants' motions for summary judgment and dismissed plaintiffs' claims based on the Utah Governmental Immunity Act, Utah Code Ann. §§ 63–30–1 through –38 (Supp.1985, amended 1989), and because there was no unconstitutional "taking" to justify their inverse condemnation claim. Plaintiffs appeal.

The winter of 1982–83 brought record amounts of snowfall to the Wasatch Mountains east of Salt Lake City. Governmental authorities anticipated a higher-than-average spring runoff. In May 1983, due to a rapid warming after many months of cold weather, it became apparent that the runoff from City Creek might overwhelm the City Creek drainage system, which consisted, in part, of a culvert running west beneath North Temple Street to the Jordan River. This, in fact, proved to be true, as massive amounts of water carried tons of debris into the drainage system, eventually clogging the North Temple culvert between 600 West and 800 West Streets, causing flooding. The immediate threat of extensive flooding in major portions of downtown Salt Lake City, including plaintiffs' properties, prompted both the mayor of Salt Lake City and the governor of the state of Utah to declare a "state of emergency."

When the North Temple culvert became clogged, defendants used sandbags and other measures to divert the flood waters of City Creek along Canyon Road to State Street and then south to 400 South, 800 South, and 1300 South Streets, where culverts in those streets carried the waters west to the Jordan River. Defendants then proceeded to remove the tons of debris which clogged the North Temple culvert and eventually excavated sections of North Temple Street and broke open the culvert to allow water to flow unimpeded. When the waters of City Creek were redirected through the North Temple culvert, they flowed through what had become an "open canal" in the middle of that street. The court stated that as a result of this procedure, from June 3 to June 18, 1983, North Temple Street was closed to vehicular traffic west of 600 West Street. From June 19

to November 4, 1983, while defendants cleaned and repaired the street and culvert, the street was open to automobile traffic and passable on both sides of the open conduit. Traffic could not, of course, make left turns over the center of the street. All cleanup and repairs were completed by November 4, 1983.

Plaintiffs' properties were never damaged by flood waters. They claim damages, however, for loss of business allegedly caused by defendants' temporary closing of a portion of North Temple Street to all vehicular traffic between June 3 and June 18 and by the traffic problems which existed during the cleanup and repair of the street through November 4, 1983. For the same reasons, plaintiffs seek compensation for inverse condemnation of their rights of ingress and egress. These claims are made even though it is conceded that plaintiffs' commercial properties were accessible by vehicle, through more circuitous routes, after June 19 and otherwise accessible on the days the street was closed to all vehicular traffic.

Plaintiffs allege that defendants were well aware of the runoff hazards from City Creek but failed to take adequate precautions to prevent the damage caused by the 1983 spring runoff; that defendants knew the existing drainage system for City Creek was inadequate to handle the high water runoff expected that spring; that defendants failed to clean the North Temple culvert in advance of the runoff and were negligent in allegedly removing culvert grates covering the inlet opening, allowing tons of debris to enter and clog the culvert in front of plaintiffs' properties; and that defendants failed to promptly repair cuts in the street surface made to remove the debris. Plaintiffs rely on several affidavits and a series of reports from the U.S. Army Corps of Engineers to substantiate their claims. While it is clear from the record that defendants were equally prepared to rebut these claims below, the court did not reach the negligence issues and, upon defendants' motions, granted summary judgment in favor of defendants and dismissed the claims under

the Governmental Immunity Act. It further found no unconstitutional taking of plaintiffs' property rights of ingress and egress.

## I.

Our general governmental immunity provision is Utah Code Ann. § 63-30-3 (1989):

Except as may be otherwise provided in this chapter, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function, governmentally-owned hospital, nursing home, or other governmental health care facility, and from an approved medical, nursing, or other professional health care clinical training program conducted in either public or private facilities.

The management of flood waters and other natural disasters and the construction, repair, and operation of flood and storm systems by governmental entities are considered to be governmental functions, and governmental entities and their officers and employees are immune from suit for any injury or damage resulting from those activities. .

When the 1983 spring floods occurred and when this action was commenced, only the first paragraph of section 63-30-3 was in existence. Under that paragraph, the trial court determined that all of defendants' flood control measures at issue in this case were "governmental function[s]" and were covered by the statute's broad grant of immunity. It then determined that none of the statutory exceptions enumerated in sections 63-30-5 to -10 applied to waive immunity and, therefore, defendants were "immune from suit for any injury which result[ed] from the exercise of a governmental function." Utah Code Ann. § 63-30-3 (Supp.1983, 1989).

The second paragraph of section 63-30-3 is a 1984 amendment which became effective March 29, 1984. It *specifically* defines the "management of flood waters and other natural disasters and the construction, repair, and operation of flood and storm systems by governmental entities" as governmental functions. It seems clear that

this language was intended to cover the very type of emergency flood control measures at issue in this case, as well as the "construction, repair, and operation" of the City Creek drainage system, including the North Temple culvert. There is some question, however, as to whether the 1984 amendment provides governmental entities with "absolute immunity" in flood control activities or whether the initial language of paragraph one, "[e]xcept as may be otherwise provided in this chapter," also applies to the language of paragraph two. The ambiguity arises through the language of paragraph two which provides that "governmental entities and their officers and employees are immune from suit for any injury or damage resulting from those [flood control] activities." Defendants suggest that this additional language of paragraph two has independent meaning separate and apart from the language of paragraph one and thus removes their flood control activities from the reach of the "[e]xcept as may be otherwise provided in this chapter" clause of paragraph one. They argue that any other interpretation would establish language of mere repetition without allowing the more specific language to control that of the more general. *Forbes v. St. Mark's Hospital,* 754 P.2d 933, 935 (Utah 1988). Plaintiffs contend that the 1984 amendment was intended merely to clarify flood control activities as governmental functions for purposes of governmental immunity but that the exceptions contained in the Governmental Immunity Act (primarily in section 63-30-10) which waive immunity under certain circumstances may be applied.

█ We need not resolve this conflict in the instant case. Even if defendants' interpretation of section 63-30-3 is correct, we will not apply the 1984 amendment retroactively. "No part of these revised statutes is retroactive, unless expressly so declared." Utah Code Ann. § 68-3-3 (1989). While it is true that this Court has made exceptions to this general rule and applied amendments retroactively "when the purpose of an amendment is to clarify the meaning of an earlier enactment," *State,*

*Dep't of Social Servs. v. Higgs,* 656 P.2d 998, 1001 (Utah 1982), or is merely an "amplification as to how the law should have been understood prior to its enactment," *Okland Constr. Co. v. Industrial Comm'n,* 520 P.2d 208, 210–11 (Utah 1974), this is not such a case. The cause of action for plaintiffs' alleged injuries and damages accrued in 1983, prior to the amendment in question. "[A] later statute or amendment should not be applied in a retroactive manner to deprive a party of his rights or impose greater liability upon him." *Okland Constr. Co.,* 520 P.2d at 210. Under defendants' interpretation of the 1984 amendment, plaintiffs would have no opportunity to sue at all, due to defendants' "absolute immunity" in their flood control activities. If the 1984 amendment provides defendants with *any* greater degree of immunity in flood control activities than that previously provided in paragraph one of section 63–30–3, which provided immunity *subject to exceptions,* it is a substantive change from the law as it existed in 1983 and cannot be applied retroactively. Thus, we will limit our governmental immunity analysis in the instant case to paragraph one of section 63–30–3.

We must first determine whether defendants' flood control activities were "governmental functions" under the Governmental Immunity Act. This Court has held that the test for determining a governmental function for governmental immunity purposes "is whether the activity under consideration is of such a unique nature that it can only be performed by a governmental agency or that it is essential to the core of governmental activity." *Standiford v. Salt Lake City Corp.,* 605 P.2d 1230, 1236–37 (Utah 1980). We later elaborated that the *Standiford* test "does not refer to what government *may* do, but to what government alone *must* do" and includes "activities not unique in themselves ... but essential to the performance of those activities that are uniquely governmental." *Johnson v. Salt Lake City Corp.,* 629 P.2d 432, 434 (Utah 1981) (emphasis in original). Plaintiffs contend that the construction, operation, and maintenance of the City Creek drainage system is not a governmental function under this standard and compare it to a municipally owned and operated sewer system which we held not to be a governmental function in *Thomas v. Clearfield City,* 642 P.2d 737, 739 (Utah 1982).

We agree, however, with the determination of the trial court in the instant case:

> The maintenance and operation of a city-wide storm drainage system may appear similar to that applied to a city-run sewage system, but on closer examination they are quantitatively and qualitatively distinct. First, operation of a flood control system in the Salt Lake valley requires a breadth of coordination that cannot reasonably be attained by private parties. Further, no private parties can deal with flood control, as they might sewage disposal, on an individual basis. Finally, the immediate threats posed to life and property by uncontrolled flooding make such operations uniquely governmental, almost equivalent to police and fire protection. This Court therefore finds that all activities relating to flood control management in City Creek Canyon are governmental functions for the purposes of construing governmental immunity under the Immunity Act.

The City Creek drainage system was constructed in portions from 1892 to 1925. We hold that the construction, operation, and maintenance of this system was and is a governmental function under the tests of *Standiford* and *Johnson* and that all of defendants' flood control activities in the instant case are covered by the Governmental Immunity Act. This is consistent with legislative intent subsequently revealed by the 1984 amendment to section 63–30–3. In addition, we note that the legislature in 1987 enacted its own definition of "governmental function," but we need not and do not rely on or consider that provision in this case. *See* § 63–30–2(4)(a) (1989).

We next consider whether immunity has been expressly waived for defendants' alleged negligence and mismanagement of the City Creek drainage system and the

1983 spring runoff. Utah Code Ann. § 63–30–10(1) (Supp.1983, amended 1989) provides:

(1) Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury:

(a) arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused; or ...;

(d) arises out of a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property.

While the trial court did not reach the question of whether defendants were negligent, if they were negligent in their flood control activities, we hold that subsections (1)(a) and (d) above would not necessarily immunize them from liability for all of their acts of which plaintiffs complain.

The "discretionary function" exception (subsection (1)(a)) covers "those decisions and acts occurring at the 'basic policy-making level,' and [is] not extended to those acts and decisions taking place at the operational level, or, in other words, '... those which concern routine, everyday matters, not requiring evaluation of broad policy factors.'" *Frank v. State*, 613 P.2d 517, 520 (Utah 1980) (quoting *Carroll v. State Road Comm'n*, 27 Utah 2d 384, 389, 496 P.2d 888, 891 (1972)). The exception is "intended to shield those governmental acts and decisions impacting on large numbers of people in a myriad of unforeseeable ways from individual and class legal actions, the continual threat of which would make public administration all but impossible." *Frank v. State*, 613 P.2d at 520.

To determine whether government acts and decisions are purely discretionary, we have adopted this four-part test:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?

(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program,

or objective as opposed to one which would not change the course or direction of the policy, program, or objective?

(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

(4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Little v. Utah State Div. of Family Servs.*, 667 P.2d 49, 51 (Utah 1983).

█ In the instant case, we agree with the trial court that the design, capacity, and construction of the City Creek drainage system involved a basic governmental policy, program, or objective of flood control to protect life and property. Defendants' acts and decisions in these regards required the exercise of basic policy evaluation, judgment, and expertise. In this regard, the trial court correctly determined:

The design of the City Creek drainage system is a uniquely discretionary function. Such design is the product of a balancing of policy factors including interpretation of data relevant to climate, rainfall, rates of erosion, etc., the development of appropriate design parameters and the economic resources that a community is willing to devote to a project providing a necessarily finite degree of protection.... These are precisely the activities for which waiver of immunity is denied.

Decisions made by defendants before the flood regarding the design, capacity, and construction of their flood control systems are the result of serious and extensive policy evaluation, judgment, and expertise in numerous areas of concern. These areas would include geological, environmental, financial, and urban planning and developmental concerns, and financial concerns, just to name a few. Even if defendants were presented with information indicating that the City Creek drainage system was inadequate to handle a severe "one in a hundred years" flood, it would still require

considerable policy evaluation, judgment, and expertise to determine whether changes or improvements should be made at public expense to manage a flood that may never occur. These are discretionary functions of defendants, and "[w]here the responsibility for basic policy decisions has been committed to one of the branches of our tri-partite system of government, the courts have refrained from sitting in judgment of the propriety of those decisions." *Little*, 667 P.2d at 51. Thus, the design, capacity, and construction of the drainage system are discretionary functions, and immunity has not been waived for defendants' alleged negligence in regard thereto.

■ Plaintiffs additionally allege that defendants were negligent in the operation and maintenance of the City Creek drainage system and in their management of the flood waters when they came. Specifically, they have alleged that defendants failed to clean the North Temple culvert in advance of the runoff; were negligent in allegedly removing culvert grates covering the inlet opening, allowing tons of debris to enter and clog the culvert in front of plaintiffs' properties; and failed to promptly repair cuts in the street surface made to remove the debris. Plaintiffs rely on the waiver of immunity for negligent acts contained in section 63–30–10(1) and also the waiver of immunity in section 63–30–9, which provides:

> Immunity from suit of all governmental entities is waived for any injury caused from a dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement. Immunity is not waived for latent defective conditions.

Inasmuch as this case was decided in the trial court on a motion for summary judgment, no full and adequate evidentiary hearing was held to resolve critical facts. Therefore, we do not have before us a record from which it can be determined who made the decisions pertaining to operation and maintenance of which plaintiffs complain, when they were made, and under what conditions. These decisions may not have been made on the policy level on which decisions were made before the flood as to the design, capacity, and construction of the City Creek drainage system. When the flood waters came, many decisions were doubtlessly made in a short time as to what course of action should be taken. An adequate record needs to be developed to separate what decisions qualify as "policy" from those that may have been only "operational." *See Little v. Utah State Div. of Family Servs.*, 667 P.2d at 51–52. We remand the case to the trial court for that purpose.

In making this determination, it must also be observed that subsection (1)(d) retains immunity when the alleged negligence "arises out of a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property." The trial judge in his memorandum decision determined that subsection (1)(d) governed all of "plaintiffs' allegations of defendants' negligent inspection, maintenance and operation of the City Creek drainage system." We believe this statement is too broad. Some of plaintiffs' allegations of negligence, such as the removal of the grates, would seem to be unrelated to any inspection or lack thereof. Each allegation of negligence should be separately examined in determining whether subsection (1)(d) applies. Similarly, the trial court ruled that the clogging of the North Temple culvert in front of plaintiffs' properties was "due to a latent defect." Immunity is retained in section 63–30–9 for latent defects in public structures and improvements. Again, we think this ruling may have been too sweeping. On remand, it should be precisely determined if latent defects in the culvert were the actual cause of the clogging.

Defendants have raised other defenses which the trial court did not reach and rule upon when it granted summary judgment to defendants on the ground of statutory governmental immunity. On remand, defendants should not be foreclosed from asserting those additional defenses should they so choose.

## II.

■ Plaintiffs also claim a right to compensation for defendants' adverse taking of

their property rights of ingress and egress, citing article I, section 22 of the Utah Constitution: "Private property shall not be taken or damaged for public use without just compensation." This claim arises out of defendants' closing of North Temple Street, which abutted plaintiffs' commercial properties, to all vehicular traffic between June 3 and June 18, 1983, and further impairing access to their properties between June 19 and November 4, 1983, by utilizing an "open conduit" of water running through the center of the street, even though traffic was passable on both sides. We agree with the trial court's determination that, under the facts of this case, the claim is without merit.

We held in *Springville Banking Co. v. Burton,* 10 Utah 2d 100, 103–04, 349 P.2d 157, 159 (1960), and later in *Bailey Service & Supply Corp. v. State Road Commission,* 533 P.2d 882, 883–84 (Utah 1975), that the mere interference with access to an owner's premises was not a "damaging" or "taking" within the meaning of article I, section 22 of Utah's constitution. *See also Three D Corp. v. Salt Lake City,* 752 P.2d 1321 (Utah App.1988). Plaintiffs alleged that damages resulted from a temporary, one-time occurrence and not a permanent, continuous, or inevitably recurring interference with property rights usually associated with and requisite in a compensable taking. *Sanguinetti v. United States,* 264 U.S. 146, 149, 44 S.Ct. 264, 265, 68 L.Ed. 608, 610 (1924); *Accardi v. United States,* 220 Ct.Cl. 347, 356–57, 599 F.2d 423, 429 (1979); *Miotke v. City of Spokane,* 101 Wash.2d 307, 334, 678 P.2d 803, 818 (1984). *See generally* L. Tribe, *American Constitutional Law* §§ 9–3, 9–5 (2d ed. 1988).

Reversed and remanded.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.