Robert **BENNETT, et al., Plaintiffs and Appellants,**

v.

**BOW VALLEY DEVELOPMENT CORP., aka Flying Diamond Development Corp., Utah corporations; City of Provo, a political subdivision of the State of Utah; and Stephen G. Stewart, an individual, Defendants and Appellees.**

No. 870118.

Supreme Court of Utah.

Aug. 16, 1990.

Mark O. Van Wagoner, Craig W. Anderson, Salt Lake City, for plaintiffs and appellants.

Gary L. Gregerson, Vernon F. Romney, Robert D. West, David C. Dixon, Provo, and Carman E. Kipp, Robert H. Rees, Salt Lake City, for Provo City.

John P. Ashton, Thomas J. Erbin, Salt Lake City, for Bow Valley Corp. and Stephen G. Stewart.

HOWE, Associate Chief Justice:

Robert Bennett and the other plaintiffs/landowners appeal from the trial court's order dismissing Provo City as a party defendant. The order has been certified as a final order pursuant to rule 54(b) of the Utah Rules of Civil Procedure. The dismissal was based on governmental immunity or, in the alternative, failure by plaintiffs to provide proper notice to the City within one year pursuant to Utah Code Ann. § 63–30–13 (Supp.1985).

In 1974, Provo City sought a location for a water storage tank and found a site at the mouth of Little Rock Canyon, owned by Flying Diamond, which later changed its name to Bow Valley Development. Bow Valley also owned an adjacent tract of land which it planned to develop as a residential subdivision called Sherwood Hills. Plaintiffs allege that in exchange for the tank site and access to it, Provo City officials agreed that Bow Valley would be given permission to develop the subdivision.

Plaintiffs purchased homes in the Sherwood Hills subdivision between 1978 and 1983. They complain that three major landslides, numerous smaller slides, two road closures, property damage, and deterioration of roads, sidewalks, and utilities occurred in the subdivision. They allege that these occurrences were caused by Bow Valley's filling natural drainage channels, failing to comply with grading plans, failing to construct roads in a safe manner and with proper compaction, and failing to revegetate cut slopes. The dates of these events do not appear in the record.

Plaintiffs further assert that despite Bow Valley's alleged negligence, Provo City released improvement bonds furnished by Bow Valley without requiring it to make the necessary improvements in the subdivision and that this constituted negligent release of bonds. Finally, plaintiffs charge that the City failed to safely maintain the storage tank and their property has been damaged by leakage from and landslides created by the tank.

Plaintiff Bennett sent written "notice of claim" to Provo City on May 28, 1985. Approximately fifty other plaintiffs sent a similar notice on January 31, 1986. Plaintiffs filed this complaint on March 6, 1986.

The Utah Governmental Immunity Act, Utah Code Ann. §§ 63–30–1 to –38 (Supp. 1985), establishes governmental immunity "for any injury which results from the exercise of a governmental function," subject to various statutory waivers. Utah Code Ann. § 63–30–3. In 1987, the legislature enacted its own definition of "governmental function." *See* § 63–30–2(4)(a) (1989). However, since this case arose prior to that enactment, we consider the definition of governmental function solely under case law applicable before the 1987 amendment:

> This Court has held that the test for determining a governmental function for governmental immunity purposes "is whether the activity under consideration is of such a unique nature that it can only be performed by a governmental agency or that it is essential to the core of governmental activity." *Standiford v. Salt Lake City Corp.*, 605 P.2d 1230, 1236–37 (Utah 1980). We later elaborated that the *Standiford* test "does not refer to what government *may* do, but to what government alone *must* do" and includes "activities not unique in themselves ... but essential to the performance of those activities that are uniquely governmental." *Johnson v. Salt Lake City Corp.*, 629 P.2d 432, 434 (Utah 1981) (emphasis in original).

*Rocky Mountain Thrift Stores v. Salt Lake City Corp.*, 784 P.2d 459, 462 (Utah 1989).

Plaintiffs' claims must be separately examined to determine whether each activity complained of was a governmental function

**422** ■  ▬▬▬▬▬▬▬▬▬

and, if it was, whether a statutory waiver applies. Where waiver applies, a timely notice of claim is required under sections 63–30–11 to –13.

■ We deal first with plaintiffs' equity claim, which does not involve immunity analysis. *See El Rancho Enters. v. Murray City Corp.*, 565 P.2d 778 (Utah 1977). Plaintiffs contend that Provo City's water storage tanks leaked an undetermined amount of water into their subdivision, causing or adding to landslide problems which obstruct the free use of their property. Plaintiffs are entitled to maintain an action in equity for the cessation of the leakage and the removal of obstructions to their property caused thereby. Immunity is no defense to such an action.

■ We next consider plaintiffs' claim for damages arising from the negligent maintenance of the water storage tank. Is the operation and maintenance of a water storage tank a governmental function? We held that under the *Standiford* and *Johnson* tests, the construction, operation, and maintenance of a city-wide storm drainage system is a governmental function. *Rocky Mountain Thrift Stores*, 784 P.2d at 462. But we held in *Thomas v. Clearfield City*, 642 P.2d 737 (Utah 1982), that the collection and disposal of sewage is not a governmental function. We reasoned:

> [W]e do not agree that these functions are uniquely governmental or essential to the core of its activity. It is not even mandatory that a governmental entity perform these functions. In many rural and recreational areas of our state, individual homeowners or small clusters of homes legally provide their own sewer services with septic tanks.

*Thomas*, 642 P.2d at 739. The same reasoning is clearly applicable to the operation of a municipal water system. Cities can and do operate water systems on a commercial basis. *Gordon v. Provo City*, 15 Utah 2d 287, 391 P.2d 430 (1964). In many areas of our state, residents maintain wells and provide their own water. Also, there are privately owned companies supplying water to residents. We conclude that the maintenance of a water storage tank is not

uniquely governmental or essential to the core of governmental activity. That being so, section 63–30–13, requiring timely presentation of a claim, did not apply on March 6, 1986, when this action was filed. *Dalton v. Salt Lake Suburban Sanitary District*, 676 P.2d 399, 400–01 (Utah 1984).

■ We next address plaintiffs' claim for a private nuisance caused by defective public improvements, including streets, curbs, gutters, sidewalks, and utilities. Immunity for damage arising therefrom is waived under section 63–30–9, which provides: "Immunity from suit of all governmental entities is waived for any injury caused from a dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement. Immunity is not waived for latent defective conditions." *See Sanford v. University of Utah*, 26 Utah 2d 285, 292, 488 P.2d 741, 745 (1971). Provo City responds that the damages of which plaintiffs complain arose from floods in 1983 and asserts immunity for the management of a natural disaster under Utah Code Ann. § 63–30–3 or, alternatively, that notice of claim was sent to the City too late to satisfy the requirements of section 63–30–13. See *Rocky Mountain Thrift Stores*, 784 P.2d at 461–62, holding that the 1985 amendment to section 63–30–3 is not retroactive. Inasmuch as plaintiffs allege continuing harm that arose from defective public improvements within the year when notice was given, factual questions remain to be developed at a full and adequate evidentiary hearing. We therefore reverse the summary judgment and remand for such a hearing. In addressing this issue, the parties and the trial court should be guided by our recent decision in *Hansen v. Salt Lake County*, 794 P.2d 838 (1990).

■ Turning to plaintiffs' tenth claim for relief, they complain that Provo City negligently released the subdivision improvement bonds furnished by Bow Valley. They charge that Bow Valley failed to complete and maintain serviceable roads, sidewalks, and curb and gutter in a safe manner and with proper compaction and failed to revegetate cut slopes to prevent erosion,

which caused damage to their property. They argue that the bonds should not have been released until these conditions were remedied, and they seek to interpret *Cox v. Utah Mortgage and Loan Corp.*, 716 P.2d 783 (Utah 1986), as holding that a cause of action will lie for the negligent supervision of funds every time a factual dispute arises out of the making of improvements.

In *Cox*, the developer had placed money in escrow to guarantee construction of the off-site improvements. The funds allegedly were negligently released by the city before the completion of the improvements. Our decision rested on a narrow ground:

> Pleasant Grove admitted that it was unable to determine for what three releases of money totalling approximately $61,000 were made in payment. That admission raises a significant factual dispute on the issue of failure to properly supervise disbursements of funds, precluding a judgment in favor of Pleasant Grove as a matter of law.

*Cox*, 716 P.2d at 786.

The plaintiffs in *Cox* attacked the negligent supervision of the escrowed funds, which we held not to be a governmental function. The act of releasing funds and being accountable to know for what purpose they are being released is "an escrow function with no aspects of uniqueness, but [is] capable of being performed by anyone." *Loveland v. Orem City Corp.*, 746 P.2d 763, 776 n. 72 (Utah 1987). However, the release of a performance bond by a city pursuant to municipal ordinance that requires release of the bond upon inspection and acceptance of the improvements is qualitatively different. In the instant case, plaintiffs are not attacking the supervision of the disbursement of funds, but the inspection and acceptance of improvements which plaintiffs allege were never completed. The inspection and acceptance of subdivision improvements are governmental functions for which immunity has not been waived. Utah Code Ann. § 63-30-10(1)(c) & (d); *Loveland*, 746 P.2d at 776.

Plaintiffs allege in their twelfth claim for relief that Provo City engaged in a conspiracy to defraud. This claim also attacks subdivision approval. Plaintiffs argue that subdivision approval was a representation that Sherwood Hills was safe and suitable for residential use and Provo City knowingly withheld information of the unstable conditions. In *Loveland*, this court concluded that the city planning commission's receipt and analysis of subdivision plat and approval were activities done in exercise of a governmental function. *Loveland*, 746 P.2d at 775–76. We stated, "Only governmental agencies such as the Orem City Planning Commission and the Orem City Council can realistically balance *all* of the competing interests when land is developed. Only they, through their supervisory roles, can impose restrictions which best achieve necessary levels of safety for future residents." *Id.* at 776; *see also Seal v. Mapleton City*, 598 P.2d 1346 (Utah 1979) (city had not abused its discretion in disapproving subdivision plan after balancing competing interests).

■ It follows that in the instant case only Provo City can balance all of the competing interests when development of land is sought. Therefore, the city planning commission's receipt and analysis of subdivision plat and approval were activities in the exercise of a governmental function and therefore were protected by governmental immunity. For the reasons we have heretofore enumerated, there is no waiver of immunity. In addition, section 63–30–10 provides that immunity is not waived for acts or omissions of employees acting within the scope of their employment when a plaintiff's injury arises out of deceit or misrepresentation by the employee. Utah Code Ann. § 63–30–10(1)(b) & (f) (Supp.1985).

■ Plaintiffs' last claim is that their property has been damaged or taken for a public use without just compensation by Provo City, including Provo's failure to maintain roads and other public improvements, in violation of amendment V of the United States Constitution and article I, section 22 of the Utah Constitution. See our recent opinion in *Colman v. Utah State Land Board*, 795 P.2d 622 (Utah 1990). *Colman* held in effect that such an

action can be maintained under article I, section 22 in proper cases. Inasmuch as the instant case was decided in the trial court on a motion to dismiss, we have no factual basis which would enable us to determine whether harms complained of are compensable under the above constitutional provisions. Since we are remanding this case to the trial court for an evidentiary hearing on other claims, the court may need to take evidence and make a determination of plaintiffs' claim for the damaging or taking of their property for a public use if they are not compensated for the same damage on their other claims. We further hold that it was unnecessary for plaintiffs to give notice of this claim to Provo City under section 63–30–13 inasmuch as their claim arose before 1987, when the legislature amended the Governmental Immunity Act by enacting section 63–30–10.5 to provide for such claims and waive immunity from suit on them. We express no opinion on whether timely notice must be given of "taking and damaging property" claims arising after the 1987 enactment, since that issue is not before us.

In sum, we conclude that plaintiffs' equitable claim is not barred by governmental immunity and need not conform to statutory notice requirements. *See El Rancho Enters. v. Murray City Corp.*, 565 P.2d 778 (Utah 1977). Furthermore, the maintenance of a water storage tank system is not a unique governmental function which is essential to the core of government, and thus there is no governmental immunity on the water tank damage claims. *See Gordon v. Provo City*, 15 Utah 2d 287, 391 P.2d 430 (1964). Factual questions need to be resolved before it can be determined whether the defective public improvements of which plaintiffs complain caused their injury and whether notice requirements were met. We hold that immunity bars the claim for negligent release of bonds, as the "precise activity" in question was not the supervision of the disbursement of funds, but the adequacy of the inspection of the subdivision and the "premature" acceptance of the improvements thereon. *See Cox*, 716 P.2d 783. Finally, we conclude

that governmental immunity does not preclude the bringing of a suit under amendment V of the United States Constitution and article I, section 22 of the Utah Constitution in a proper case. *See Colman*, 795 P.2d at 625–627. Timely notice of claim under section 63–30–13 was unnecessary.

We reverse and remand to the district court for further proceedings consistent with this opinion.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.