ROCKY MOUNTAIN THRIFT STORES INC., dba Hope of America Thrift Store; Sine Investment, Inc., dba Scotty's Travel Motor Hotels; Site, Inc., dba Ten Pin Lounge; Rancho Lanes, Inc., dba Rancho 42 Lanes Recreational Center; Jerry Sine Investments, a partnership dba Se Rancho Motor Hotel; and Stockholm Restaurant, Inc., Plaintiffs and Appellants,

v.

SALT LAKE CITY CORPORATION, a municipal corporation of the State of Utah; Salt Lake City Mayor Ted Wilson; Al Haynes, Assistant City Engineer; State of Utah; Scott Matheson, as Governor of the State of Utah; State Council of Defense; State Road Commission; and Salt Lake County, a body corporate and politic of the State of Utah, Defendants and Appellees.

No. 910471.

Supreme Court of Utah.

Dec. 13, 1994.

Wesley F. Sine, Salt Lake City, for plaintiffs.

Roger F. Cutler, Bruce R. Baird, Steven W. Allred, Salt Lake City, for Salt Lake City defendants.

R. Paul Van Dam, Atty. Gen., Allan L. Larson, Anne Swensen, Salt Lake City, for State of Utah defendants.

David E. Yocom, Kevan F. Smith, Salt Lake City, for Salt Lake County.

STEWART, Associate Chief Justice:

This case is here on appeal for the second time. In *Rocky Mountain Thrift Stores, Inc. v. Salt Lake City Corp.*, 784 P.2d 459, 464 (Utah 1989) (*Rocky Mountain I*), the Court reversed a summary judgment in favor of defendants and remanded for development of a factual record to determine whether the defendants' decisions regarding the management of floodwaters were policy-type decisions for purposes of determining whether governmental immunity barred plaintiffs' action for damages. *See* Utah Code Ann. § 63–30–10(1)(a). On remand and after additional discovery, defendants' motions for summary judgment were granted. We affirm.

Plaintiffs are proprietors of commercial properties located along North Temple Street in Salt Lake City. North Temple was blocked off for a three-week period in 1983, and traffic to plaintiffs' properties was impeded for several months as a result of flooding from City Creek. Plaintiffs claimed damages for lost revenues caused by the temporary closure of North Temple and for traffic problems existing during the street's cleanup and repair. They sued Salt Lake City, Salt Lake County, and the State of Utah for these damages allegedly caused by negligent management of floodwaters during the 1983 spring runoff that caused the flooding. They also sought compensation for inverse condemnation of their rights of ingress and egress to their properties.

In *Rocky Mountain · I*, the trial court granted summary judgment in favor of defendants on the ground that no unconstitutional taking occurred and that the Utah Governmental Immunity Act, Utah Code Ann. §§ 63–30–1 to –38, barred plaintiffs' negligence suit. On appeal, the Court held that the design, capacity, and construction of the drainage system were discretionary functions entitled to governmental immunity and that any injury to plaintiffs caused by the blocking of North Temple did not constitute inverse condemnation. *Rocky Mountain I*, 784 P.2d at 463, 465. However, because of the inadequacy of the record, the Court did not decide whether defendants' operation of the North Temple conduit was entitled to immunity. Accordingly, the Court remanded for further proceedings.

On remand, the parties engaged in additional discovery, and after plaintiffs certified their readiness for trial, each of the defendants moved for summary judgment. In a memorandum decision dated February 26, 1991, the trial court granted the State's motion for summary judgment. The trial court ruled that the State was not involved in any operational activities associated with flood management and that the State's decision to delegate floodwater management to Salt Lake City and Salt Lake County was a policy decision entitled to immunity under Utah Code Ann. § 63–30–10(1)(a). The trial court also ruled that the State's failure to issue Salt Lake City a permit allowing excavation

of North Temple was immune under § 63–30–10(1)(c).

In a later memorandum decision, the trial court granted Salt Lake City's and Salt Lake County's motions for summary judgment. The trial court criticized plaintiffs' failure to comply with Rule 4–501(2)(b) of the Code of Judicial Administration that requires parties in motions for summary judgment to identify with specificity each disputed fact in their memorandum to the court.[1] The court ruled that Salt Lake City and Salt Lake County were immune from any claim predicated on the City's and County's failure to have a regular program of inspection and maintenance for the North Temple conduit under § 63–30–10(1)(a) (immunity for the exercise or performance of a discretionary function) and § 63–30–10(1)(d) (immunity for negligent inspections or the failure to inspect). The trial court also ruled that there was no evidence supporting plaintiffs' claims that the City and County were negligent in using a 12–inch rather than a 48–inch auger, using fire hoses to clear the conduit, and diverting City Creek waters down State Street. The trial court held that there was no evidence showing a causative link between plaintiffs' damages and the use of a drag-line and blasting to clear the conduit. Finally, the trial court held that plaintiffs had failed to establish that defendants had a duty of reasonable care to these particular plaintiffs, apart from a general duty of care to the public as a whole, *see Ferree v. State,* 784 P.2d 149 (Utah 1989), particularly where plaintiffs' claim for lost business revenues was based on difficulties of customer ingress and egress.

## I. ISSUES NOT BEFORE THE COURT

■ Plaintiffs contend that summary judgment for Salt Lake City and Salt Lake County was improper because, among other reasons, there are material issues of fact as to

(1) when defendants knew or should have known that the 1983 spring runoff would be enough to require action, (2) why the grate covering the culvert opening in City Creek Canyon was removed, and (3) the timeliness of the repair of the block-long trench in North Temple after the flooding. These issues were not raised before the trial court and may not now be raised. *See State v. Smith,* 866 P.2d 532, 533 (Utah 1993); *Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040, 1045 (Utah 1983).

■ Plaintiffs also attempt to appeal the trial court's grant of summary judgment to the State. The order as to the State was final on April 17, 1991, and specifically stated that there was no just reason for delay and directed entry of judgment in accordance with rule 54(b) of the Utah Rules of Civil Procedure. Once certified under rule 54(b), the judgment was final and appealable. *See Bennion v. Pennzoil Co.,* 826 P.2d 137, 138 (Utah 1992); *Pate v. Marathon Steel Co.,* 692 P.2d 765, 767 (Utah 1984); *see also* 10 Wright & Miller, *Federal Practice and Procedure* § 2656 (1983). Plaintiffs were therefore required to appeal that decision within thirty days. Utah R.App.P. 4. Any challenge once certification was granted should have been raised at that time. *See Kennecott Corp. v. State Tax Comm'n,* 814 P.2d 1099 (Utah 1991). Because plaintiffs failed to timely appeal the summary judgment in favor of the State, that judgment is final.

## II. SCOPE OF REMAND

■ Plaintiffs appeal the entry of summary judgment arguing that the order decided issues that went beyond the scope of remand because no evidentiary hearing was held. In *Rocky Mountain I,* this Court did not expressly direct the trial court to hold an evidentiary hearing on remand; it merely directed that a factual basis be developed to

---

1. Rule 4–501(2)(b) states:

   The points and authorities in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each disputed fact shall ... *specifically refer to those portions of the record* upon which the opposing party relies.... All material facts set forth in the movant's statement and properly supported by an accurate reference to the record *shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party's statement.* Code of Judicial Admin. Rule 4–501(2)(b) (emphasis added).

enable the court to distinguish between discretionary or policy decisions, on the one hand, and operational or ministerial decisions on the other. *Rocky Mountain I,* 784 P.2d at 464. That distinction pertained to the governmental immunity issue. In directing that the nature of defendants' decisions be clarified factually, the Court did not intend to preclude the trial court from deciding the case on any appropriate ground. Therefore, once discovery was completed and plaintiffs declared their readiness for trial, the trial court could decide as a matter of law that some of the City's and County's decisions were discretionary and immune, as in fact the court did, or operational and not immune. Also, the trial court would still have needed to decide whether plaintiffs' claims were entitled to go to the jury under the legal elements of a claim for negligence, including duty, breach of duty, causation, and damages.

The trial court first ruled that Salt Lake City's and Salt Lake County's failure to have a regular program of inspection and maintenance was a discretionary function and therefore immune from tort liability under the Governmental Immunity Act. The trial court then assumed that the City's and County's other decisions with respect to the management of the flooding were operational and not immune, but ruled as a matter of law that plaintiffs had not raised a material issue of fact with respect to defendants' negligence and therefore were not entitled to go to a jury. In so ruling, the trial court did not violate this Court's remand order.

## III. SUMMARY JUDGMENT

■ On appeal from summary judgment, we determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact. *Bushnell Real Estate, Inc. v. Nielson,* 672 P.2d 746, 749 (Utah 1983); *Bowen v. Riverton City,* 656 P.2d 434, 436 (Utah 1982).

■ Plaintiffs assert that the trial court erred by entering summary judgment for the City and County because there were material issues of fact concerning the maintenance and inspection of the North Temple culvert. The trial court ruled that the City and Coun-

ty were immune under Utah Code Ann. § 63–30–10. Whether the scope of that statute encompasses the actions of this case is highly doubtful. Nevertheless, plaintiffs assert no material issues of fact with respect to those issues. It is undisputed that in the months prior to the May 1983 floods, the North Temple culvert carried high volumes of water and that a visual inspection of the culvert by opening manholes between Memory Grove to Seventh West revealed water flowing freely with no apparent obstruction. In addition, it is uncontested that for a time, the culvert continued to carry water even after floodwaters were diverted down North Temple and State Street. The undisputed facts show that prior to the torrential flooding, a failure to maintain and inspect the culvert did not cause plaintiffs any damages.

■ Plaintiffs also argue that summary judgment was improper because material issues of fact exist as to whether the City and the County were negligent in using a bucket tied to a drag-line, in using a 12–inch auger, in using fire hoses, in blasting to remove debris from the conduit, and in diverting City Creek floodwaters down State Street. The trial court ruled that there was no evidence to support plaintiffs' assertions that those actions were negligent and that the City and the County did not owe a duty of due care to plaintiffs individually, as opposed to a duty that ran to the general public. *See Higgins v. Salt Lake County,* 855 P.2d 231, 237 (Utah 1993); *Madsen v. Borthick,* 850 P.2d 442, 445 (Utah 1993); *Rollins v. Petersen,* 813 P.2d 1156, 1161 (Utah 1991); *Ferree v. State,* 784 P.2d 149, 151–52 (Utah 1989).

The winter of 1982–83 saw abnormally high snowfall throughout the Wasatch Front. The snow that accumulated in the mountains was twice the normal amount. In May of 1983, exceptionally high temperatures caused the accumulated snow to produce runoffs in the streams that exceeded that which occurs once in every 100 years. The runoff problems were exacerbated by several intense thunderstorms during that spring. As a result, flooding occurred on all streams throughout Salt Lake County and the Wasatch Front. State Street was transformed

into a man-made canal, the Fourth South Street conduit became clogged, and conduits on the Ninth and Eighth South Streets were nearly blocked. Entire hillsides were carried away by the floodwaters, including banks and hillsides almost five miles upstream from the mouth of City Creek Canyon. The record is replete with uncontroverted evidence establishing that the flooding occurring in the spring of 1983 was unprecedented and a 100–year flood.

■ On managed waterways, the government has a duty to protect the public generally from flooding. *See Rollins v. Petersen,* 813 P.2d 1156, 1159–62 (Utah 1991). However, "[t]o hold a government agency or one of its agents liable for negligence . . . a plaintiff cannot recover for the breach of a duty owed to the general public, but must show that a duty is owed to him or her as an individual." *Madsen v. Borthick,* 850 P.2d 442, 445 (Utah 1993). In this case, plaintiffs had to show the existence of a duty of due care on the part of defendants that ran to plaintiffs as individuals and not just to the public generally.

■ Government cannot be charged with a tort duty of care to protect all persons from injury caused by extraordinary acts of nature that are so extreme as to be uncontrollable and unpredictable. When such events occur, individuals must themselves shoulder their losses. "There is no duty to provide for floods so unusual and extraordinary as to bring them within the category of an 'act of God.' " [2] *Southern Ry. v. Jefferson,* 185 Va. 384, 38 S.E.2d 334, 336 (1946). In *Gossner v. Utah Power & Light,* 612 P.2d 337, 340 (Utah 1980), this Court stated that "unusually heavy snow cover over the watershed . . . may send flood water down the channel . . . and properly [be] classified as an act[ ] of God for which defendant would not be liable."

It is long settled that a disaster of such an extraordinary and unprecedented manifestation of nature will relieve a defendant of liability. *Id.; see also Harper v. Johannesen,* 84 Idaho 278, 371 P.2d 842, 847 (1962);

*Gerber v. McCall,* 175 Kan. 433, 264 P.2d 490, 494 (1953); *City of Piqua v. Morris,* 98 Ohio St. 42, 120 N.E. 300, 302–03 (1918); *Frye v. Pennsylvania R.R.,* 187 Pa.Super. 367, 144 A.2d 475, 477 (1958); *Jefferson,* 38 S.E.2d at 336; *Nielson v. County of King,* 72 Wash.2d 720, 435 P.2d 664, 668 (1967); *Jacoby v. Town of Gillette,* 62 Wyo. 487, 174 P.2d 505, 512–13 (1947).

In *Benavides v. Gonzalez,* 396 S.W.2d 512, 514 (Tex.Civ.App.1965), the court held that the plaintiff's damages were caused by unprecedented rainfall and flooding that established a valid defense and justified summary judgment for the defendant. *Golden v. Amory,* 329 Mass. 484, 109 N.E.2d 131 (1952), held that the defendants, owners and managers of a dike, were not negligent as a matter of law when, after an extraordinary flood began, they used all available help to sandbag a dam but did nothing to save a dike. The court stated that "the defendants were not negligent even if some other action than that taken would have been better." *Id.,* 109 N.E.2d at 132.

Without a duty, there can be no negligence as a matter of law, and summary judgment is appropriate.

Affirmed.

ZIMMERMAN, C.J., DURHAM, J., and GREENWOOD, Court of Appeals Judge, concur.

HOWE, Justice, concurring:

I concur but write to point out that plaintiffs correctly state that in *Rocky Mountain I,* we remanded the case to develop an adequate record to separate decisions which qualified as "policy" from those that may have been only "operational." However, we also expressly held that on remand, defendants should not be foreclosed from asserting any of the other defenses which they had raised in their pleadings in addition to governmental immunity, which was their defense in *Rocky Mountain I.*

---

**2.** We do not mean to imply that there can never be liability for flooding. Liability remains when damages occur as a result of isolated periodic flooding and damages caused by negligent altera-

tions and improvements in flood control systems. *See Hamblin v. City of Clearfield,* 795 P.2d 1133, 1136 (Utah 1990); *Hansen v. Salt Lake County,* 794 P.2d 838, 840–47 (Utah 1990).

The record reflects that all three defendants had raised in their pleadings lack of duty to plaintiffs and that the flood of 1983 was an "act of God" for which they should not be held liable. Thus, our decision today, which relies on those defenses, does not depart from the order of remand in *Rocky Mountain I.*

GREENWOOD, Court of Appeals Judge, sat to fill the vacancy on the Court.