Rick **HAMBLIN** and **Cherlynn Hamblin, Plaintiffs and Appellants,**

v.

**CITY OF CLEARFIELD, Defendant and Appellee.**

No. 860289.

Supreme Court of Utah.

July 18, 1990.

Kelly G. Cardon, Ogden, for plaintiffs and appellants.

Henry Heath, Robert K. Hilder, Salt Lake City, for defendant and appellee.

ZIMMERMAN, Justice:

Plaintiffs Rick and Cherlynn Hamblin appeal from a summary judgment that dismissed their action against the City of Clearfield. The Hamblins initiated this suit in April of 1985 to recover cleanup costs and compensation for flood damage to their home. This flooding was allegedly caused by changes in surface water drainage that resulted from the construction of a nearby subdivision authorized by the City, as well as from inadequate measures undertaken by the City to handle the changes in drainage. The district court granted the City summary judgment and ordered the suit dismissed with prejudice. It reasoned that the governmental immunity provisions of the Utah Code barred the action. It also concluded that the "taking or damaging" provision of the Utah Constitution, article I, section 22, did not provide the Hamblins with an independent cause of action against the City. We reverse and remand for further proceedings.

Since this is an appeal from a grant of summary judgment, we recite the facts in a light most favorable to the party against whom the judgment was entered. *Branam v. Provo School Dist.,* 780 P.2d 810, 810 (Utah 1989); *Zions First Nat'l Bank v. Clark Clinic Corp.,* 762 P.2d 1090, 1092 (Utah 1988). The Hamblins reside in Clearfield, Utah, in a home they bought in 1975. In 1978 or 1979, construction began on a new subdivision near the Hamblins' home. In approving the subdivision plan, the City authorized the elevation and regrading of the property. The City also authorized the construction of a storm system that channels water draining from the subdivision to a point in front of and uphill from the Hamblins' home. As a result of these improvements, the natural drainage pattern was altered so that all surface water draining from the subdivision flows toward the Hamblins' property.

In May of 1981, following a heavy rain, the Hamblins' property was flooded by runoff from the subdivision. This was the first time the property had been flooded since the Hamblins purchased the home in 1975. The City rebuilt the intersection in front of the Hamblins' home sometime in 1981 and enlarged the catch basin uphill from their property in November of 1983, but these efforts have not alleviated the problem. The Hamblins' property continues to be flooded during heavy rains. Other homes in the area have not experienced similar flooding.

From the date of the first flooding through October of 1984, the City reimbursed the Hamblins for all cleanup expenses they incurred as a result of the periodic floodings. In October of 1984, the City ceased making reimbursement. It has never reimbursed the Hamblins for the permanent damage and decrease in market value they claim by reason of the physical harm to the property.

The Hamblins filed suit against the City in April of 1985. They alleged that their property had been damaged by an improperly designed and constructed drainage system for which the City was responsible. The City responded with a motion for summary judgment. It asserted that the Hamblins' action was barred by the governmental immunity provisions of the Utah Code. In particular, it argued that the 1984 amendment to section 63–30–3 of the code [1] conferred absolute immunity from suit for harm resulting from "[t]he management of flood waters ... and the construction, repair, and operation of flood and storm systems by governmental entities" and that this amendment should be applied retroactively to give the City absolute immunity from all harms complained of by the Hamblins. Utah Code Ann. § 63–30–3 (1986).

The district court granted the City's motion for summary judgment in December of 1986. It first ruled that it was not necessary to determine whether the 1984 amendment to section 63–30–3 should be applied retroactively because the City had paid all of the Hamblins' damage claims through October of 1984, a date after the effective date of the 1984 amendment. The court also held that the payment of the cleanup expense claims by the City did not estop it from contending that section 63–30–3 barred the Hamblins' action. Finally, the court stated that section 63–30–3 did bar the Hamblins' action, although it did not explain this conclusion.

1. Section 63–30–3 now provides:

Except as may be otherwise provided in this chapter, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function, governmentally-owned hospital, nursing home, or other governmental health care facility, and from an approved medical, nursing, or other professional health care clinical training program conducted in either public or private facilities.

The management of flood waters and other natural disasters and the construction, repair, and operation of flood and storm systems by governmental entities are considered to be governmental functions, and governmental entities and their officers and employees are immune from suit for any injury or damage resulting from those activities.

Utah Code Ann. § 63–30–3 (1986). With the exception of the language "and other natural disasters," which was added in 1985, 1985 Utah Laws ch. 93, § 1, the entire second paragraph was added to section 63–30–3 by the 1984 legislature. 1984 Utah Laws ch. 33, § 1.

In their initial complaint, the Hamblins had not alleged that the uncompensated damaging of their property was a taking or damaging in violation of article I, section 22 of the Utah Constitution. However, they raised this issue in their memorandum in opposition to the City's first motion for summary judgment. Apparently in response to this argument, the district court, after holding that the claims stated in the initial complaint were barred by section 63–30–3, permitted the Hamblins to amend their complaint to add a claim under article I, section 22 of the Utah Constitution.[2] The City filed a second motion for summary judgment, which the district court then granted. It held that article I, section 22 was not self-executing and that the Hamblins could not seek damages for its violation because the legislature had not authorized such an action. In granting this second motion for summary judgment, the district court restated its earlier ruling that the 1984 amendment to section 63–30–3 barred the Hamblins' claim and, for the first time, held that section 63–30–3 was to be applied retroactively.[3]

■■■ Before addressing the Hamblins' arguments, we note that summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Utah State Coalition of Senior Citizens v. Utah Power and Light Co.*, 776 P.2d 632, 634 (Utah 1989); *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1385 (Utah 1989). In determining whether the lower court correctly found that there was no genuine issue of material fact, we view the facts and inferences to be drawn therefrom in the light most favorable to the losing party. *Ron Case*, 773 P.2d at 1385. And in deciding whether the trial court properly granted judgment as a matter of law to the prevailing party, we review the trial court's decision on legal questions for correctness. *CECO Corp. v.*

*Concrete Specialists, Inc.*, 772 P.2d 967, 969 (Utah 1989); *Mountain Fuel Supply Co. v. Salt Lake City Corp.*, 752 P.2d 884, 887 (Utah 1988); *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985).

The Hamblins contend that the district court made several erroneous rulings. First, they argue that section 63–30–3 does not bar their action. Second, they claim that the voluntary payment of cleanup costs through October of 1984 should estop the City from contending that the 1984 amendment to section 63–30–3 of the code bars their action. Third, they contend that even if section 63–30–3 bars a negligence action, article I, section 22 of the Utah Constitution is self-executing and provides a remedy for the taking or damaging of their property. We will address first, the claim that section 63–30–3 does not bar the action; second, the estoppel claim; and finally, the article I, section 22 claim.

The Hamblins argue that the trial court erred in ruling that section 63–30–3 of the Code bars their action. This claim has three subparts. First, the Hamblins challenge the district court's construction of their complaint in its initial grant of summary judgment. Specifically, the court viewed the complaint as not seeking damages for the period before October of 1984. Apparently, the court reached this conclusion by assuming that the only harm caused by the flooding was that represented by the cleanup costs. Since all parties agreed that the City had reimbursed the Hamblins for all cleanup expenses they had incurred from the first flooding to October of 1984, there was no issue as to any claim for uncompensated pre–1984 damages. Second, the Hamblins challenge the district court's conclusion in the first summary judgment that the statute barred all post-October 1984 claims. The final part of the Hamblins' challenge to the conclusion that section 63–30–3 bars this action is directed to the second summary judgment, in which the court stated that section 63–30–3 is

---

2. Article I, section 22 of the Utah Constitution provides: "Private property shall not be taken or damaged for public use without just compensation." Utah Const. art. I, § 22.

3. The apparent inconsistency between the first and second summary judgment orders on this issue was not explained by the court.

retroactive (although it did not retreat from its earlier construction of the complaint).

With respect to the question of the damages sought, the Hamblins argue that they sued the City to recover not just unpaid post-October 1984 cleanup expenses, but for compensation for the permanent damage done to their property by the periodic flooding from the first occurrence. This claim for pre– and post–1984 damages is in no way covered by any cleanup-cost payments the City made. We agree. The Hamblins' complaint, Rick Hamblin's deposition, and the other memoranda filed by both the Hamblins and the City indicate that the suit sought damages for all harms the flooding caused the Hamblins' property from inception. Therefore, the district court erred in ruling that the Hamblins' action concerned only damages accruing after October of 1984. We reverse the court's first grant of summary judgment to the extent that it is based on such a reading of the complaint and the factual showings of the parties.

■ The Hamblins also challenge the district court's determination in the first summary judgment that section 63–30–3 bars any claims for damages accruing after the effective date of the 1984 amendment. The district court's ruling was based on the premise that the second paragraph of section 63–30–3, added in 1984, grants absolute immunity to governmental entities for certain activities related to flood control. This court has recently held in *Hansen v. Salt Lake County*, 794 P.2d 838 (Utah 1990), that the second paragraph of section 63–30–3 does not grant blanket immunity for the described activities, that section 63–30–3 is only a clarification of previously existing law that flood control activities are governmental functions, and that the various exceptions to immunity that are invoked by the first sentence of the first paragraph of section 63–30–3 are equally available for claims arising out of flood control activities. *Hansen*, 794 P.2d at 840–847. This provides a separate basis for reversing the district court's ruling on the first motion for summary judgment.

■ The last ground on which the Hamblins challenge the district court's section 63–30–3 rulings is that the court erred in holding that the 1984 amendment to section 63–30–3 was retroactive. Our rulings since this case was argued have essentially disposed of this issue. We held in *Hansen* that section 63–30–3 grants qualified immunity rather than absolute immunity, *Hansen*, 794 P.2d at 845–846, and we held in *Rocky Mountain Thrift Stores* that flood control activities were governmental functions before the 1984 amendment was enacted, *Rocky Mountain Thrift Stores*, 784 P.2d 459, 462 (Utah 1989). The 1984 amendment thus served to clarify existing law rather than to work a substantive change to the law. *Hansen*, 794 P.2d at 845–846. For this reason, analysis under section 63–30–3 as it existed prior to the 1984 amendment would be the same as analysis under the 1984 amendment.

■ The Hamblins' next argument is that the district court erred in holding that the City is not estopped from asserting any immunity conferred by the 1984 amendment to section 63–30–3. They argue that because the City made payments prior to the enactment of the 1984 amendment, it had accepted responsibility for the flood damage and should be estopped from asserting immunity arguments based on section 63–30–3. Our intervening decisions have mooted the question. The 1984 amendment only clarified that flood control activities were governmental functions subject to qualified immunity; it did not grant any new level of immunity.

■ The final claim of the Hamblins is that the district court erred in ruling that they could not assert a claim under article I, section 22 of the Utah Constitution. They contend that article I, section 22 is self-executing and provides a remedy to them for the taking or damaging of their property. We have addressed the issue of whether article I, section 22 is self-executing since the district court's ruling. In *Colman v. Utah State Land Board*, 795

P.2d 622, 632 (Utah 1990), we held that article I, section 22 was self-executing. Therefore, the Hamblins can assert a claim for a taking or a damaging.

Both of the district court's grants of summary judgment are reversed, and the matter is remanded for further proceedings.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.