**GATE CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff and Appellant,**

**v.**

**Edward A. DALTON, Jr., John C. Forrester, Jr., Michael C. Johnson, and Daniel W. Marcum, et al., Defendants and Appellees.**

**No. 890498–CA.**

Court of Appeals of Utah.

March 26, 1991.

Clark W. Sessions, argued, Roy B. Moore, Kevin Egan Anderson, Clark E. Snelson, Campbell, Maack & Sessions, Salt Lake City, for plaintiff and appellant.

Earl Jay Peck, John K. Mangum, argued, Jay R. Mohlman, Nielsen & Senior, Salt Lake City, for defendants and appellees.

Before GARFF, JACKSON and NEWEY[1], JJ.

## OPINION

GARFF, Judge:

Gate City Federal Savings and Loan Association (Gate City) appeals a summary judgment granted in favor of appellees, Edward A. Dalton, Jr., John C. Forrester, Jr., et al. (Borrowers).

## FACTS

In the spring of 1981, Kilburn Vacation–Homeshare, Inc. (Kilburn) and Vaughn Cook, Vaughn Cook & Associates, and/or C.C. International, entered into a venture whereby Cook would build and develop homes at Jeremy Ranch, Utah and Kilburn would market and sell the homes as timeshare units. Cook approached Gate City Mortgage Company and/or Gate City Federal Savings and Loan Association (Gate City)[2] for long-term financing of the project. Gate City informed Cook that it could not lend money to a corporation for permanent home financing and that the only financing money available was for Fannie Mae qualified individual borrowers.

In September 1981, Gate City executed a loan commitment agreement with Cook, wherein Gate City committed to finance "individual unit long-term loans" for property in Jeremy Ranch for a consideration of a 2½% nonrefundable fee of $55,000. This agreement specified that the 18.75% loans would be made to individual borrowers for a maximum of $200,000 per unit, with the total maximum being $2,200,000. This document was signed by John M. Aldrich for Gate City Mortgage Company, by John Gaustad for Gate City Savings and Loan Association, and by Cook. The loan commitment agreement would last until December 30, 1981.

Cook sought out individuals who, for consideration, would apply for loans in their own names so the loans could be sold on the secondary market. In December 1981, shortly before the loan commitment would expire, Gate City made eleven separate variable interest rate loans to groups of one or more of the Borrowers for the purchase of newly constructed residential properties in Jeremy Ranch. The loans totaled approximately $2,200,000.

Upon closing, Borrowers received deeds to their respective properties from C.C. International. Borrowers immediately resold their properties to C.C. International pursuant to a Uniform Real Estate Contract. These contracts included language whereby C.C. International agreed "to take property subject to first mortgage to Gate City Mortgage ... and to assume, or cause the same to be assumed by any subsequent buyer." C.C. International, in turn, resold the properties to Kilburn. Each Borrower executed a variable interest rate promissory note payable to Gate City, secured by a trust deed to each Borrower's respective property. Paragraph ten of each note (which quotes paragraph seventeen of the

---

1. Robert L. Newey, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (Supp.1990).

2. Cook negotiated with Gate City Mortgage Co., a wholly owned subsidiary or affiliate of appellant Gate City Federal Savings and Loan Association. The mortgage company made the loans, and immediately assigned the promissory notes and deeds of trust, which secured them, to appellant Gate City Federal. For ease of reference, and because it makes no difference for purposes of this opinion, we use the short-hand reference "Gate City" when referring to either entity.

trust deed verbatim) contains the following acceleration provision:

> Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent ... Lender may, at Lender's option, declare all the sums secured by this Deed of Trust to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Deed of Trust shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Deed of Trust and the Note.

All transactions included a document prepared by Gate City entitled "Indemnity Agreement" signed by representatives of Gate City and C.C. International. The indemnity agreement, prepared by Gate City and signed by Stanley F. Jenkins for Gate City, and by Cook for C.C. International, contains the following language: "Whereas [C.C. International] has obtained from [Gate City] a first mortgage loan ... on the following described property...." There follows a description of the particular property. Following that are several paragraphs stipulating that mechanics' and/or material liens are to be omitted from the mortgage, although C.C. International would still be required to indemnify Gate City as to the liens. At the end of the last substantive paragraph, after the pre-printed language, the following language has been typewritten in by Gate City: "The obligation of [C.C. International] in this agreement shall extend to the mortgage executed by, through, or for [C.C. International] of [sic] assigns on the above premises."

Following the closings, Gate City sent all loan payment materials, including notices of interest rate changes, to Kilburn or to Alta Title, which were handling collection of payments from the sale of Kilburn's timeshares. All loan payments to Gate City were made by or for Kilburn. Gate City sent nothing to Borrowers and Borrowers sent no money to Gate City. Gate City had no contact with Borrowers during this time.

In the spring of 1984, Kilburn ceased to make monthly payments and the notes went into default. Gate City then resumed communication with Borrowers, thirty months after the loan closings. Gate City filed eleven separate actions against Borrowers seeking judicial foreclosure of the trust deeds securing the promissory notes. The properties were sold and Gate City then proceeded against each Borrower on a deficiency action. Pursuant to Borrowers' motion, and against Gate City's objection, the court consolidated the actions. Borrowers then moved for summary judgment.

The court ruled that "the operative documents are clear and unambiguous on their face and reflect an assumption and release as more particularly set forth in [Borrowers'] Memorandum in Support thereof." The court ruled that the indemnity agreement, a document provided by Gate City and signed by representatives of Gate City and C.C. International, was "an unambiguous assumption agreement." The court also determined that Gate City had waived its right to accelerate under each of the promissory notes. That waiver, coupled with the indemnity agreement, released Borrowers from liability pursuant to the terms of the promissory notes and trust deeds.

Pursuant to Gate City's motion, the court reconsidered its summary judgment, affirmed its earlier ruling, and certified its judgment as final. Gate City appeals from that final judgment.

## STANDARD OF REVIEW

 Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is enti-

tled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Hamblin v. City of Clearfield,* 795 P.2d 1133, 1135 (Utah 1990). In determining whether the lower court correctly found that there was no genuine issue of material fact, we view the facts and inferences to be drawn therefrom in the light most favorable to the losing party. *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1385 (Utah 1989). We review the trial court's decision on legal questions for correctness. *Hamblin,* 795 P.2d at 1135.

We first determine whether the language in the indemnity agreement relating to assumption of the mortgage by C.C. International and waiver of its right to accelerate by Gate City, relied upon by Borrowers, is subject to two or more meanings, thus rendering it ambiguous. *C.J. Realty, Inc. v. Willey,* 758 P.2d 923, 928 (Utah Ct.App. 1988). If the language is ambiguous, a question of fact is then raised which, in turn, may preclude summary judgment. *Frisbee v. K & K Construction Co.,* 676 P.2d 387, 390 (Utah 1984). However, a provision is not necessarily ambiguous "simply because one party seeks to endow [it] with a different meaning than that relied upon by the drafter." *Buehner Block Co. v. UWC Assocs.,* 752 P.2d 892, 895 (Utah 1988).

To determine whether the contractual provisions relating to assumption and waiver are subject to differing interpretations, we first "look to the four corners of the agreement to determine the intentions of the parties." *Ron Case,* 773 P.2d at 1385; *John Call Engineering v. Manti City Corp.,* 743 P.2d 1205, 1207 (Utah 1987); *Nixon and Nixon, Inc. v. John New & Assocs.,* 641 P.2d 144, 146 (Utah 1982).

## THE ACCELERATION CLAUSE AND THE INDEMNITY AGREEMENT

■ Going to the four corners of the document, the first issue is whether Gate City waived acceleration of the due on sale clause and whether C.C. International executed a written assumption accepted by Gate City. Paragraph seventeen of the trust deed, quoting paragraph ten of the promissory note, says in relevant part:

> If the lender [Gate City] has waived the option to accelerate provided in this paragraph 17 and if borrower's successor in interest has executed a written assumption agreement accepted in writing by lender, lender shall release borrower from all obligations under this deed of trust and the note.

The clear language of this clause sets forth three requirements for Borrowers' release from their obligations on the note: (1) a waiver by Gate City of its option to accelerate; (2) a written assumption executed by Borrowers' successor in interest; and (3) the assumption must be accepted in writing by Gate City.

Borrowers argue, and the trial court found,[3] that these three requirements were fulfilled by the indemnity agreement, prepared and executed by Gate City after the loan closings between Borrowers and Gate City. Borrowers claim that the indemnity agreement, its title notwithstanding, is also an assumption agreement. The agreement served to allow C.C. International to assume the various notes from the individual borrowers. Borrowers contend that the indemnity agreement contains language, specially typed in by the parties and signed by Gate City, indicating C.C. International's agreement to undertake and assume the loans:

> The obligation of [C.C. International] in this agreement shall extend to the mortgage executed by, through, or for [C.C. International] of [sic] assigns on the above premises.

This agreement also recites that C.C. International "has obtained a first mortgage loan ... on the described property, with Gate City being the lender."

---

3. This reasoning is set forth in Borrowers' memorandum filed in support of their motion for summary judgment. The lower court adopted the reasoning in its minute entry ruling dated February 15, 1989: "DEFENDANTS' MOTION FOR SUMMARY JUDGMENT is granted for the reasons that the operative documents are clear and unambiguous on their face and reflect an assumption and release as more particularly set forth in the Memorandum in Support thereof."

Gate City does not challenge the provision of the note and trust deed allowing for transfer, assumption and waiver of acceleration. Instead, Gate City challenges the interpretation made by Borrowers and adopted by the lower court of its own indemnity agreement. It argues that the only obligation incurred by C.C. International in the agreement was to "promptly secure the discharge of all such [mechanic and material] liens," and to indemnify Gate City for any loss it may sustain "by reason of omitting to set out such lien(s) as an exception in the mortgage."

Gate City further argues that the contractual provision relating to the assumption is subject to differing interpretations, thus raising a material dispute of fact, which in turn precludes summary judgment. Gate City offers several different possible interpretations of the language that the obligation of C.C. International shall extend to the mortgage. Three of these interpretations are: (1) C.C. International's duty to indemnify runs not to the owner of the property, but rather to the holder of the security interest; (2) C.C. International's duty runs with the land, thus the reference to "of assigns on the above premises;" and (3) C.C. International's duty to indemnify from mechanics' liens extends to the mortgage executed by Borrowers as assigns of C.C. International.[4]

Considering the facts in the light most favorable to Gate City, we look at whether the various interpretations offered by Gate City are reasonable and plausible.

The first interpretation, that C.C. International's duty to indemnify runs only to the holder of the security interest, ignores the language at the beginning of the agreement that C.C. International has obtained the mortgage. The property description in each agreement, the date, and the amount

thereof, all precisely correspond with the same details of each promissory note. Therefore, the loans referred to in the indemnity agreements can be none other than the loans made originally to Borrowers.

The second interpretation, that C.C. International's duty runs with the land, conflicts with the language added by Gate City stating that the obligation to pay and indemnify "shall extend to the mortgage."

The third interpretation, that C.C. International's duty to indemnify from mechanics' liens extends to the mortgage executed by Borrowers as assigns of C.C. International, again ignores the added language expressly stating that the mortgage was "executed by, through, or for" C.C. International.

In sum, each interpretation offered by Gate City ignores the plain meaning of the document, ignores specially added language of the document, or strains the meaning of the added language. We conclude that the plain interpretation of the indemnity agreement is that C.C. International agreed not only to indemnify Gate City for any mechnics liens on the property, but also to assume the individual mortgages. Thus, the indemnity agreement satisfies two of the three requirements in that it is a written assumption agreement executed by the successor in interest, C.C. International, and accepted in writing by Gate City.

## WAIVER OF ACCELERATION

■ The remaining requirement for Borrowers' release from their obligations on the notes is a waiver by Gate City of its option to accelerate. The language in the trust deed is identical to that in the note as to waiver:

Lender shall have waived such option to accelerate if, *prior to the sale or trans-*

---

4. Gate City notes other "ambiguities" in the indemnity agreement which it drafted: (1) Gate City claims it was error for the trial court to assume that the first "of" in the phrase "of assigns of the above premises" was a typographical error for the word "or;" (2) the referral to C.C. International, rather than Kilburn, as obtaining loans from Gate City for $200,000 on the

described properties; and (3) the usage of the term "mortgage" in describing the promissory notes and trust deeds. Because these "ambiguities" do not go to the material issue of whether the document was also intended to serve as an assumption agreement, we see no need to consider them.

*fer*, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Deed of Trust shall be at such rate as Lender shall request. (Emphasis added.) Borrowers interpret this paragraph as providing a method of waiving acceleration in writing *prior* to transfer. They emphasize that the language does not limit the manner by which Gate City may waive its option to accelerate after a transfer. They argue that this language, coupled with the language regarding assumption and release, leaves to ordinary contract construction, whether a given act constitutes a waiver *after* transfer. Their first argument, adopted by the trial court, is that the indemnity agreement constitutes such a prior written waiver of the acceleration clause.

Gate City argues that no waiver ever occurred because there is no writing reciting an agreement as to interest rate payable on the note and reciting that the credit of C.C. International is satisfactory to Gate City.

We disagree. The acceleration clause, found in the trust deed and the note, provides that "[i]f all of [sic] any part of the Property or an interest therein is sold or transferred by Borrower *without Lender's prior written consent* ... Lender may, at Lender's option, declare all the sums secured by this Deed of Trust to be immediately due and payable." (Emphasis added.) This clause conditions Gate City's right to accelerate payments upon Borrowers transferring the property without Gate City's prior written consent. That is, if Gate City did give prior written consent to a transfer, it would have no need to implement the remedy of acceleration because it would have had the opportunity to consider the interest rates, the credit-worthiness of the proposed transferee, as well as its option to accelerate.

We find that Gate City gave its prior written consent in the indemnity agreement wherein Gate City, via its officer, Stanley F. Jenkins, acknowledged in writing C.C.

International's assumption of the mortgages: "Whereas [C.C. International] has obtained from [Gate City] a first mortgage loan ... [on the described property]." Gate City again acknowledged the transfer in the added typewritten language: "The obligation of [C.C. International] in this agreement shall extend to the mortgage executed by, through, or for [C.C. International] of [sic] assigns on the above premises."

## CONCLUSION

Because we see no genuine issue of material fact as to (1) whether C.C. International executed a written assumption, (2) whether this assumption was accepted in writing by Gate City, and (3) whether Gate City waived its option to accelerate, we affirm the trial court's ruling.

Affirmed.

JACKSON and NEWEY, JJ., concur.